THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROY LOBB, Defendant-Appellant.

(No. 11251;

Fourth District—September 10, 1971.

Chester Thomson and James G. Walker, both of Bloomington, for appellant.

Clement M. Toohill, State's Attorney, of Clinton, for appellee.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

The defendant was convicted by a jury in the Circuit Court of DeWitt County of the offense of burglary. He was sentenced to the Illinois Penitentiary for a sentence of not less than 8 nor more than 13 years. This appeal is from the conviction and sentence.

The defendant asserts that the evidence is not sufficient to prove his guilt beyond a reasonable doubt; that the trial court committed reversible error in certain evidentiary rulings; and that the sentence imposed was cruel and unusual punishment and arbitrarily more severe than that imposed upon an associate. Additional points are asserted by the defendant relating to certain procedures employed in the trial court during a pretrial competency hearing. He also asserts incompetency of counsel and error in the form of an order of commitment to a named state hospital as in need of mental treatment.

A consideration of these various points is helped by a chronological recitation of the labored processes revealed by this record. The defendant was indicted in June of 1968 for a burglary allegedly committed in April of 1968. He was arraigned and counsel appointed on June 11, 1968. In July the cause was set for jury trial on September 16. The defendant did not appear on the date set for trial. The matter was continued. A bench warrant was issued. He subsequently did appear. The cause was continued and again set for trial January 20, 1969. Prior to that date the defendant appeared with his court-appointed counsel and counsel indicated the defendant desired to change his plea to guilty. The defendant, contrary to the representation of counsel, informed the court that he did not desire to change his plea, but did desire to be released from what he described as the solitary confinement in the county jail.

One week before the scheduled jury trial, a petition was filed in the circuit court by the defendant's brother, Charles S. Lobb, asserting that the defendant was a person in need of mental treatment. The defendant was brought into the courtroom on a stretcher. A hearing was held on the petition. The court found the defendant in need of mental treatment and ordered his hospitalization in a facility in the Department of Mental Health.

The defendant was transported to the Jacksonville State Hospital and on January 31, 1969 his status at the hospital was changed from one of unauthorized absence to absolute discharge. In March 1969 the absolute discharge was suggested to the court after it was further suggested that the defendant had previously absented himself without authorization

from the hospital. On the March 10 date he was in custody of the sheriff of DeWitt County. The jury trial was rescheduled for April 1969.

The defendant then sought to dismiss his court-appointed counsel for purposes of employing counsel. This permission was granted and upon his failure to employ private counsel, other counsel was appointed. Counsel thus appointed moved to cancel the April jury setting until such time as the defendant had been declared by the court to be no longer in need of mental treatment and no longer mentally incompetent.

Defendant's competency was thereafter the subject of a jury proceeding in April 1969. The jury found the defendant competent and at a jury trial of May 1969 on the burglary indictment the defendant was found guilty and sentenced. Subsequent to that proceeding counsel for defendant sought to postpone sentencing pending a determination of the sanity of the defendant. After hearing, that motion was denied. Probation was denied and the defendant was given the sentence of not less than 8 nor more than 13 years.

In April 1968 a store in Clinton, Illinois, known as Jerry's Red Cardinal Market was burglarized and certain grocery products, cigarettes and money were taken. On the date of the burglary one Robert Finn and Judith Armstrong drove by the store, noticed a car parked near the store; after passing the store, they turned around, returned to the store, and in the light of their headlamps saw two persons—a man and a woman—struggling with an object. Finn got out of his car, was able to observe the license of the parked vehicle, and the man and woman got into their car and left. Finn followed them for some distance and then reported the incident to the county sheriff.

An investigation of the store indicated that a screen had been torn from a rear window and a window broken, an inside partition had been broken, the rear door was unlocked from the inside and was open, a safe had been moved to the outside, the drawers of the cash register had been removed and the money was missing, and various items of merchandise were scattered about the store and outside the premises. One of the store owners testified that certain items of meat, cigarettes and hosiery appeared to be missing.

A radio bulletin concerning the incident was issued. A state trooper heard the broadcast, recognized the defendant's car as one that he had just assisted as a stalled vehicle. He returned to the stalled vehicle, arrested its occupants—the defendant and one Jane Myers. The officer noticed a basket or box of items on the back seat of the auto. Thereafter, another state trooper arrived at the scene of the arrest, remained with the car for about 10 minutes; a wrecker was called, and the car was re-

moved to a wrecking yard. A state policeman stayed with the car until a deputy sheriff from DeWitt County Sheriff's Department relieved him.

The subjects were returned to DeWitt County from Macon County, the place of the arrest, and a basket of items located in the back seat of the car was taken to Clinton at the time the defendant and Jane Myers were returned to Clinton. A Robert Maxwell, one of the owners of the burglarized store, examined the items in the basket. He initialed a label from one of the packages of meat and after the various items were marked they were turned over to Maxwell. He took them and put them in the freezer of his store. On the first day of trial he brought them from the store to the courthouse. There was no showing of exclusive possession and notwithstanding this, certain items of evidence as exhibits were admitted. There is no question but that certain of the items were identified by Maxwell at the DeWitt County jail on the night of the burglary.

Jane Myers testified for the People, admitted her part in the burglary and identified the defendant, Roy Lobb, as the man who was involved in the burglary. An allegedly prior inconsistent statement of the witness was established and other matters of impeachment were fully developed as to Miss Myers.

■ The evidence in this record clearly supports the finding of guilty of the offense of burglary. The testimony of Miss Myers, although an accomplice and subject to suspicion, clearly indicated the defendant's guilt. The evidence as to the vehicle, the contents of the vehicle, and the possession by the defendant soon after the burglary of the items taken in the burglary, are all corroborative of the accomplice's testimony. *People v. Rossolille*, 38 Ill.2d 316, 231 N.E.2d 585.

■ The evidentiary rulings of which the defendant complains relating to continuity of possession and a failure to show an exclusive control and possession and that the offered exhibits were in the same condition as when seized, need not be considered, for, even if error, such did not constitute reversible error in the context of this record.

■ We have examined the proceedings with reference to the competency hearing and the complaint of instructions relating thereto and find no procedural infirmities. This issue was not originally raised on the appeal by appellate-counsel. The record was supplemented on motion of the defendant and he has filed a brief in support of various contentions with reference to the competency proceeding. All of the evidence with reference to this procedure is to the effect that the defendant while suffering from a severe alcoholic problem was, in fact, competent. The instructions given, considered as a series, were not in error.

■ Neither do we find it necessary to discuss in detail the defendant's

assertion that trial counsel was incompetent. An assertion of incompetency must be accompanied by a showing of prejudice to the defendant, without which prejudice the outcome would probably have been different. Our examination of this record reveals the existence of no such substantial prejudice. See *People v. Morris*, 3 Ill.2d 437, 121 N.E.2d 810.

▮ We next consider the issue of the sentence of not less than 8 nor more than 13 years imposed upon the defendant. The record shows that Jane Myers, his accomplice, with no prior criminal record was given probation. The defendant was described in the probation officer's report as one that has been in trouble with the law since he was 13 years of age. He is described as a person with a good education, employable as a meat cutter, whose wife recently divorced him and who had three children dependent upon him for support—then ages 10, 8 and 6. The defendant had been previously convicted of burglary on two occasions. There is no doubt from reading this record that the defendant's antisocial conduct was directly related to the serious alcoholic problem. Excessive use of alcohol cannot however be used to justify antisocial or criminal conduct.

This sentence is said to be disparate because of the severe sentence imposed upon the defendant and probation given to the accomplice. The theory of sentencing is that the court will consider the offense and the offender, his likelihood of rehabilitation and all of the other subjective criteria. Disparity of sentencing is a serious judicial problem. It can arise when defendants of like background and like prospects for rehabilitation are given unlike and disparate sentences. It can also arise where defendants of substantially different rehabilitation prospects and different backgrounds and different records are given the same sentence.

▮ The sentence here is at cross purposes with the notion of indeterminate sentences. The minimum of 8 years measures parole eligibility. The maximum of 13 years measures the total time of permissible incarceration. We have said in *People v. Scott*, 117 Ill.App.2d 344, N.E.2d 553; the First District Appellate Court has said in *People v. Jones*, 118 Ill.App. 2d 189, N.E.2d 843; and the American Bar Association Committee on sentencing alternatives and procedures has said the principal of indeterminacy is best served when the minimum sentence is no longer than one-third of the maximum sentence. While we have approved this principal, we have also indicated that such cannot be accepted as an absolute mathematical formula. Such observation however does not diminish the desirability of indeterminate sentences with a substantial spread between the minimum and the maximum.

As we have noted, this defendant has had two prior convictions for

burglary. In June 1949 he was sentenced to a term of one year to 15 months and the record indicates that he was incarcerated in the State Penitentiary at Menard and at Pontiac and discharged upon expiration of sentence in August 1950. In March of 1952 he was again convicted of burglary, given a sentence of 5-10 years. At the time of the first conviction the defendant was 16 years old. He was 19 at the time of the second conviction. There is an indication of a parole violation but no indication of any convictions subsequent to his discharge upon the second sentence. This record is of course an aggravating factor. The 10 year record of no indicated convictions is a mitigating factor. Under these circumstances, it is difficult, if not impossible, for the trial judge to ascertain the optimum time for release of the defendant whose age at the time of sentencing was 36. It is for this reason that the principle of indeterminate sentence and reliance upon the expertise available to the parole board has been accepted as the most responsible form of sentencing.

■ We deem it appropriate in this case, acting under the authority of Supreme Court Rule 615, that the minimum sentence be reduced from 8 to 5 years. The judgment of conviction and sentence as modified are affirmed.

Judgment modified and affirmed.

SMITH, P. J., and TRAPP, J., concur.