People of the State of Illinois, Plaintiff-Appellee, v. Gordon Kent Goad, Defendant-Appellant.

**Gen. No. 66–43.**

Second District.

December 27, 1966.

LeRoy J. Tornquist, of Rockford, for appellant.

William R. Nash, State's Attorney of Winnebago County, of Rockford, and Alfred W. Cowan, Jr., Assistant State's Attorney, for appellee.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

Defendant Gordon Kent Goad was tried before a jury, found guilty of burglary, and sentenced to the penitentiary for a term of not less than two years, nor more than ten years. In this appeal he contends that the trial court erred in denying his motion to suppress an oral confession; and that the State failed to prove him guilty beyond a reasonable doubt.

Defendant's Motion to Suppress his oral confession alleged under oath that he was arrested at 9:00 o'clock in the morning of September 14, 1965; that shortly after his arrival at the Winnebago County jail he asked Officers Iasparro, Ebens and Graham for permission to call an attorney and they denied such request; that the officers began interrogation and during that time he repeated his request for permission to call an attorney and that his request was denied; that he was taken to his cell and enroute again asked permission of the desk officer to call an attorney and was denied his request; that on the morning of September 15th, he was again called to the interrogation room and enroute, asked and again was denied the permission by head jailer Banks; that he was

taken to the interrogation room and renewed his request to Officers Iasparro, Ebens, Graham and Wales and was again denied the permission; that during interrogation he was promised that if he confessed to an alleged burglary in Ogle County, the officers would try to have that offense tried with this case; that if he admitted the commission of three alleged burglaries, the officers would let him call an attorney; and that he made an oral statement September 15th and was then given permission to call an attorney.

At the hearing on the Motion to Suppress defendant Goad testified generally to the same effect as related in his sworn affidavit except that he then said he had asked the jailer, Banks, for permission to call an attorney prior to being questioned on September *14th*, rather than on the way to the interrogation room on September *15th*; and, also contrary to his affidavit, he testified that two additional officers, Wales and Brown, were present on September *15th*.

Defendant testified on cross-examination that when he was asked by the officers if they should bring the impleaded codefendants down, he answered:

"A. I admitted doing it.
"Q. Well, are those your words?
"A. I never told any words. I admitted doing the burglary. He asked me did I do it or not, and I said yes, that was it."

He further testified that after one of the codefendants was brought down, "When I was leaving the interrogation room that day, I told them, Yes, I did it."

At the hearing on the motion, Officers Iasparro, Ebens and Brown testified that they interrogated defendant on September *14th*, within 15 or 20 minutes of his arrival at the jail, *and that no other officer was present.* Officer Iasparro testified that Sanner came into the interroga-

tion room on the *14th* at Goad's request to see him "before he said anything"; that Goad and Sanner had a conversation at which Sanner told Goad the other codefendants "have copped out on us" and that Goad "might as well tell him your story"; that Goad said substantially what was in the typed statement but refused to sign it when it was brought to him. He testified that he asked Goad if he wanted an attorney and Goad said, "No, he didn't have any money, he didn't need an attorney." He explained his rights to him as they were posted and Goad did not request to see or call an attorney in his presence. Goad said that he went into the building with the codefendants, they busted open a safe and split the money. No threats or promises were made. The entire interrogation took only an hour. He testified that there was no subsequent statement taken.

Officer Ebens also testified that Goad did not request an attorney; that Goad stated "he knew his rights"; and that when asked if he wanted to call an attorney, Goad said he had no money, he didn't wish to call; and that Goad never asked to call an attorney.

Officer Brown testified at the hearing on the motion substantially as did the other two officers as to the circumstances of the interrogation, except that he believed that the interrogation took an hour and 15 or 20 minutes. He also testified that he was Captain of detectives and did not assign any other officers to interrogate the defendant at any time.

Defendant Goad did not testify before the jury.

The defendant contends that the statement should have been suppressed because he was denied counsel, and because all material witnesses to the statement were not called or their absence explained.

 Refusal of a request to consult with counsel coupled with a failure to warn an accused of his right to remain silent contravenes the Sixth Amendment to the United States Constitution under Escobedo v. Illinois,

378 US 478, 84 S Ct 1758 (1964), interpreted in The People v. Hartgraves, 31 Ill2d 375, 202 NE2d 33 (1964). These cases are controlling here and apply to this trial which took place before the effective date of Miranda v. Arizona, 384 US 436, 86 S Ct 1602 (1966). The burden was on the State to prove by a preponderance of the evidence that the confession was voluntary when tested by a Motion to Suppress and the State must produce or satisfactorily explain the absence of all material witnesses connected with the controverted confession to discharge this burden. The People v. Wright, 24 Ill2d 88, 180 NE2d 689 (1962).

█ The trial court properly applied these rules in ruling on the conflicting evidence. There is neither evidence or claim of any physical or mental abuse or coercion in the obtaining of the statement. The preponderance of the evidence supports the finding that there was a single interrogation, that of September 14, 1965; that three officers, Iasparro, Ebens and Brown were the only officers present; that defendant was warned of his right to remain silent and that what he said could be used against him; that he did not request and therefore was not refused, the assistance of counsel before giving his statement; and that the confession was not induced by any physical or mental coercion. As in Hartgraves (supra) the overwhelming weight of the evidence shows that defendant voluntarily confessed after being confronted by the codefendant Sanner, who testified that the other codefendants had confessed.

The defendant's argument that he had been denied his request for counsel prior to his interrogation as well as during interrogation relates to a claim of denial of protection under the Sixth Amendment to the United States Constitution. The court properly held, on the conflict in the evidence as to whom and when he made the alleged requests, that his rights were not violated.

Defendant's urging as error that all persons to whom the prior requests were allegedly made were not called at the hearing on his Motion to Suppress, confuses the rulings relating to the right to counsel with those relating to proof of voluntariness of a confession. All witnesses who could have testified on the issue of the voluntariness of the confession were called. The officers whom defendant alleged he talked to prior to the interrogation were not alleged to have participated in any conduct which amounted to a chain of physical or mental coercion culminating in the confession. This clearly distinguishes the case of The People v. Wright, supra, upon which defendant has relied.

The court is further of the opinion that, on the whole record there was credible evidence sufficient to prove beyond any reasonable doubt that the defendant was guilty of the crime of burglary as charged. The specific grounds for reversal are that there was not sufficient proof of defendant's presence within the building.

Officer Ebens testified to the defendant's oral statement: that defendant, together with codefendants Overturf and Sanner drove to the Kishwaukee Auto Parts building in Overturf's car; that Overturf and Sanner went on the roof and cut a hole and the defendant stayed below. He was *inside* watching by the door so if anyone came he could give warning. They got the money from the safe and drove to an alley where they parked until morning, splitting up the money.

Officer Iasparro in testifying to the same oral statement related similar testimony with the exception that he testified that defendant said he stayed *outside* the building as a lookout.

Officer Brown testified that defendant talked primarily to Iasparro and Ebens on the other side of the interrogation room and could not recall what defendant said was his part in the burglary.

110

Overturf, the codefendant, testified that he had pleaded guilty to violation of his probation the morning of the trial, based on his participation in the burglary. He had known defendant for a year previously. He, driving his car, and with Sanner as a passenger picked up defendant at 9:00 p. m. on the night of the burglary. They drove to about two blocks of the building and Sanner watched the building with binoculars. He dropped the defendant off a block from the building with a walkie-talkie radio, proceeded to the building, keeping in radio communication with the defendant. He and Sanner then cut the hole in the roof and he dropped into the building. The burglar alarm was disconnected. The door was opened for Sanner and defendant and they came into the building. Defendant stood watch at a window inside the building; he then testified that he carried the money, Sanner carried the burglary tools, and defendant carried the radios out of the building. He further testified to the division of the money taken.

On cross-examination Overturf testified that he had been in trouble with the law before as a felon; that his lawyer had advised him that if he didn't plead guilty, he would have a possibility of a prison term with no recommendations for probation; but if he did, he would have a much better chance of a lesser sentence and a recommendation for parole.

 The rule is well established that while accomplice testimony is viewed with suspicion, it may be sufficient to convict even though uncorroborated and even though the witness testifies that he expects leniency. The People v. Nastasio, 30 Ill2d 51, 55, 195 NE2d 144 (1963) ; The People v. Flaherty, 396 Ill 304, 314, 71 NE2d 779 (1947). Here it was corroborated by defendant's statement and the rule follows that material corroboration lends the testimony of a witness great weight even though the witness is an accomplice. The People v. Baker,

16 Ill2d 364, 370, 158 NE2d 1. Under the evidence, the proof was adequate to hold the defendant accountable for the burglary under chap 38, sec 5–2(c) of Ill Rev Stats (1965).

The judgment of the Circuit Court of Winnebago County is affirmed.

Judgment affirmed.

DAVIS and ABRAHAMSON, JJ., concur.