(No. 40046, 40295 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* JOHN V. CARTER, Appellant.

*Opinion filed Nov. 30, 1967.—Rehearing denied Jan. 18, 1968.*

Ward, J., took no part.

Daniel C. Ahern and Kevin J. Gillogly, both of Chicago, for appellant.

William G. Clark, Attorney General, of Springfield, and John J. Stamos, State's Attorney, of Chicago, (Fred G. Leach, Assistant Attorney General, and Elmer C. Kissane and Matthew J. Moran, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice House delivered the opinion of the court:

This case involves appeals from two separate convictions of John V. Carter, the defendant. He was found guilty by a jury in the circuit court of Cook County of a 1951 murder and in a separate bench trial was convicted of a 1964 burglary. The court sentenced defendant to the penitentiary for a term of not less than 40 years nor more than 60 years on the murder conviction and not less than 2 nor more than 5 years on the burglary conviction, the sentences to run concurrently. Both convictions are appealed directly to this

court, defendant alleging violations of his constitutional rights.

A gun and women's shoes found, in defendant's car were admitted into evidence at the murder trial. Ballistics evidence showed that the gun had been used to kill Lorraine Brownstein and there was other evidence which tended to show that defendant and the perpetrator of the crime had a sexual fetish for women's shoes. During the trial for burglary, a pair of women's shoes and a black key case taken from an apartment building and found in defendant's car were admitted into evidence. In addition to the murder and the burglary indictments, Ann J. Lavery, whose credit card was found in defendant's car, accused defendant of assaulting and robbing her in 1958. In each case defendant made a timely motion to suppress as evidence the items seized from his car without a warrant. The motions were denied and the evidence was admitted.

Defendant was arrested for a traffic violation which arrest he contends was unlawful and was made without probable cause and that the subsequent search was unreasonable. Therefore, he argues, he was deprived of due process of law by the admission into evidence of the product of an illegal search and seizure.

On February 23, 1964, at about 3:30 A.M., Lee Reiter, a Skokie police officer, stopped defendant, who was driving a red and white 1955 DeSoto, for failure to have the rear license plate illuminated. Reiter and another police officer, Zerfass, who arrived shortly after defendant was stopped, gave substantially similar accounts of the events surrounding the arrest.

Reiter testified that as he met the car driven by defendant he noticed that it resembled a car used in a robbery attempt reported in a police bulletin several days earlier. He turned and followed the car and then observed the absence of a rear license-plate light, so he stopped defendant, obtained his driver's license, and told him he was under

arrest for the traffic violation. In response to a question from Reiter, defendant said he was on his way home but when Reiter observed that he was going in the wrong direction, defendant said he was going to Baxter Laboratory to look for work. Reiter testified that he knew the laboratory was not open at that time. Meanwhile, Officer Zerfass had arrived and while defendant and Reiter were standing at the rear of the DeSoto, Zerfass opened the right front door of the automobile and found a loaded automatic gun in the glove compartment. At this point defendant became very nervous and said, "Now, I am really in trouble." Defendant was then handcuffed and according to Reiter, gave permission to search the trunk of the automobile where an open suitcase containing five women's shoes and newspaper clippings of newlyweds and debutantes was found. Similar clippings were found in the interior of the automobile. Defendant and his automobile were taken to the police garage where both officers testified they received defendant's consent to conduct a more thorough search of the car in his presence. This search disclosed a Marshall Field credit card issued to Ann J. Lavery and a black key case in the glove compartment. The shoes, newspaper clippings, gun, credit card, and key case were seized and defendant was charged with the traffic violation and unlawful use of weapons. Defendant denied that his rear license plate was not lighted, that he gave the answers attributed to him concerning his destination, or that he ever consented to a search of his automobile.

In support of the contention that the arrest for the traffic violation was unlawful, defendant says that the arresting officer Reiter did not know at the time at what distance the rear license plate must have been legible under section 104 of the Uniform Act Regulating Traffic on Highways (Ill. Rev. Stat. 1963, chap. 95½, par. 201), and therefore he could not have had reasonable grounds or probable cause to believe an offense had been committed.

However, Reiter stated that defendant's automobile had no light on the rear license plate and that at the time he believed the applicable statute required the rear license plate to be illuminated even though he did not know the distance at which the statute required the license to be legible. Furthermore, he testified that he could not read the rear license plate at a distance of 30 feet. We think this establishes reasonable grounds to believe a traffic offense had been committed.

The real issue presented by defendant's first contention is whether the search of his automobile without a warrant was reasonable in light of the facts and circumstances existing at the time.

Defendant relies heavily on *People* v. *Lewis,* 34 Ill.2d 211. Lewis was carefully re-examined in *People* v. *Jones, ante,* p. 427, and *People* v. *Brown, ante,* p. 453, both decided this term. On the basis of the Supreme Court decision in *Cooper* v. *California,* 386 U.S. 58, 17 L. Ed. 2d 730, 87 S. Ct. 788, we concluded that "the mere fact that the defendant is in custody and his automobile impounded does not in itself invalidate the search, and insofar as *Lewis* and other similar cases state a contrary conclusion, they are overruled." *People* v. *Jones, ante,* p. 433.

Here, the circumstances were such as to justify a belief by the police officers that they were dealing with more than an ordinary traffic violator. (See *e.g., People* v. *Davis,* 33 Ill.2d 134; *People* v. *Thomas,* 31 Ill.2d 212.) Although the police bulletin listing the DeSoto wanted in connection with the robbery attempt in fact described it as a red 1956 DeSoto, Reiter testified that when his superior officer briefed them as to the wanted car, he understood it to be a 1955 or 1956 red and white DeSoto without a rear license plate light and only one tail light. Officer Zerfass testified that he could not recall if the car had been described to them as red or red and white. Defendant testified that the rear license plate light and both tail lights on his car were

working, and that there is a substantial difference in body style between the 1955 and 1956 DeSoto. After defendant was stopped, he gave highly improbable answers to questions concerning his destination and even changed his first response after it was ascertained to be completely illogical. Upon the basis of these facts, a report of a recent attempted armed robbery in which a similar car had been used, evasive or highly improbable answers by defendant, and the time of the morning, we believe the officers were justified in conducting an immediate search. Furthermore, in view of our decisions in *Jones* and *Brown,* the subsequent searches, after defendant was handcuffed and at the police garage, were not unreasonable, since they were related to the initial search and to the crime of which defendant was suspected. Accordingly defendant's motion to suppress the evidence obtained as a result of these searches was properly denied.

Defendant next contends that the failure of the court to grant his motion to suppress evidence purportedly elicited from him while in custody effectively deprived him of his right to counsel and to not give evidence against himself. He testified that he was not informed of his right to counsel or to remain silent; that he was not permitted to call a lawyer or his family when he was taken to the police station; that he requested a lawyer about 7 to 10 times within the first two hours after he was arrested; and that he continued to ask for a lawyer until about 6:00 or 7:00 P.M. when he was permitted to call a lawyer after being told he was charged with murder.

Officer Reiter testified that as defendant was brought into the police station he told him of his right to a lawyer and that he could remain silent; that he called defendant's attention to a card on the wall which listed defendant's rights and which he could read or which would be read to him but that defendant did not bother to read it; that defendant did not repeatedly ask for a lawyer; and that when defendant did request permission to make a telephone call,

Reiter told him he could as soon as he was booked. Other officers testified that defendant asked that his family not be notified; that he did not request to make a phone call in their presence and that he never asked for a lawyer.

Statements attributed to defendant were that he admitted ownership and continuous possession, from 1946 to the time of the arrest, of the gun found in his car, that he admitted a sexual fetish for women's shoes, and he offered to plead guilty to manslaughter. There is no allegation that the alleged statements were involuntarily made, but rather defendant denies making them.

There is a direct conflict between the testimony of defendant and that of the police officers, which raises a question of fact as to whether defendant had ever made and been denied a request for a lawyer. The trial court determined that question in favor of the State. On review we will not disturb such determination unless manifestly against the weight of the evidence.

While the point was not specifically raised on appeal, we feel we should not pass without comment the admission in evidence of the offer by defendant to plead guilty to manslaughter. "Unless the defendant subsequently enters a plea of guilty or *nolo contendere* which is not withdrawn, the fact that the defendant or his counsel and the prosecuting attorney engaged in plea discussions or made a plea agreement should not be received in evidence against or in favor of the defendant in any criminal or civil action or administrative proceedings." American Bar Association Project on Minimum Standards for Criminal Justice, "Pleas of Guilty", page 77. (Tentative Draft, Feb. 1967.) In *People* v. *Hamilton*, 60 Cal. 2d 105, 383 P.2d 412, the Supreme Court of California held that under their Penal Code, upon which the above standard is based, it was error to allow a member of the prosecuting attorney's staff to testify that defendant had made an offer to plead guilty to

a lesser offense than that for which he was being tried. The court affirmed the conviction however, holding that the error was harmless in view of the overwhelming evidence of defendant's guilt. The Supreme Court denied *certiorari*. (*Hamilton* v. *California,* 36 L.W. 3173.) The harmless error theory was approved by the Supreme Court in *Chapman* v. *California,* 386 U.S. 18, 17 L. E. 2d 705, 87 S. Ct. 824, 827. Both the suggested standard (see Standard Relating to Pleas of Guilty, Am. Bar Ass'n Project, p. 78) and the *Hamilton* case deal with offers or negotiations made with the prosecutor or his staff, while here defendant allegedly offered to a police officer to plead guilty to manslaughter apparently without any prompting or promises on the part of the police. The suggested standard expressly states that it does not apply to such offers.

Defendant next contends that prejudicial error occurred when the court, during the murder trial, permitted testimony concerning an offense allegedly committed by the defendant in 1958, approximately 7 years after the death of Lorraine Brownstein. He argues that this was evidence of a purported similar occurrence which was too remote in point of time and which attempted to show a prior effect or condition from a distant subsequent cause or condition.

During the murder trial, Ann J. Lavery, whose credit card was found in defendant's automobile, testified that on October 5, 1958, as she walked through the lobby of her apartment building, someone struck her on the head from behind, causing her to fall to the floor and lose consciousness. When she regained consciousness, a man whom she identified as defendant was kneeling on the floor near her feet and knees. He pulled out a gun and fired at her, but missed. She fainted and when she again regained consciousness defendant and her purse containing the credit card and other items were gone. The State contends that evidence concerning this 1958 occurrence was essential in

that it aided in the investigation for and ultimate identification of the weapon used to kill Lorraine Brownstein, and in that it also aided in the identification of the attacker as a man with a fetish for women's shoes.

Police officers and ballistics experts testified that a .32 caliber bullet and cartridge case recovered from the scene of the assault on Ann J. Lavery were compared with a cartridge case found at the scene of the Brownstein murder and it was ascertained that the same weapon fired the shots in each instance. Prior to testing the bullet and cartridge case recovered from the scene of the Lavery attack, the police were unable to determine what kind of weapon was used in the Brownstein murder. As a result of the tests and comparisons of the Lavery cartridge case and bullet with the Brownstein cartridge case, the police were able to determine what class or type of weapon was involved, and the area of search was significantly reduced.

In addition to Miss Lavery's testimony that her attacker was kneeling in the area of her feet and knees, the picture of Lorraine Brownstein showed that her lower legs, below her knees, were covered with newspapers that were torn and in a state of disarray, indicating some sort of activity or moving about at the victim's feet, and one of her shoes was off. There was also testimony that the defendant admitted to having a fetish for women's shoes, and 5 women's shoes were found in the trunk of his car.

We have recognized that although evidence showing the commission of a separate offense unrelated to the crime charged ordinarily should not be received, if such evidence tends to prove any fact material to the issue being tried, it is properly admissible. (*People* v. *Ostrand,* 35 Ill.2d 520; *People* v. *Bernette,* 30 Ill.2d 359.) Evidence admissible for one purpose is not affected by inadmissibility for another. 1 Wigmore on Evidence, 3rd ed., sec. 216 at page 712.

The testimony concerning the attack on Miss Lavery tended to establish the identity of the weapon used in the

Brownstein murder and its owner. We feel defendant's conduct in connection with the Lavery attack was very similar in significant respects to his conduct in connection with the Brownstein murder indicating a common design and was admissible as an exception to the rule prohibiting evidence of a crime other than that for which defendant is being tried. See *People* v. *Brown,* 26 Ill.2d 308; 2 Wigmore on Evidence 3rd ed. secs. 304, 363, and 413.

Defendant next contends that the prosecutor made improper closing arguments which resulted in depriving defendant of a fair trial. Specifically, defendant argues that the prosecutor made reference to a confession not in evidence, that he argued facts not in evidence, and that he urged a guilty verdict for the protection of wives, sisters, and mothers of the jurors. We have examined the record and the prosecutor's closing argument, and we find that the remarks objected to were inferences drawn from the evidence and were not unwarranted. Nor were the comments referring to the protection of wives, sisters, and mothers so inflammatory as to constitute reversible error. See *People* v. *Ostrand,* 35 Ill.2d 520.

Finally, defendant argues that he was not proved guilty beyond a reasonable doubt under either indictment. We have carefully ·examined the record and, in considering all of the evidence, we find this contention without merit. The judgments of the circuit court of Cook County under both indictments are affirmed.

*Judgments affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.