THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HARRY HAYES (Impleaded), Defendant-Appellant.

(No. 55584;

First District—February 10, 1972.

Gerald W. Getty, Public Defender, of Chicago, (Lee T. Hettinger and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Daniel J. Pierce, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE McGLOON delivered the opinion of the court:

The defendant was found guilty of the offense of murder by a judge, sitting without a jury, who sentenced him to from 25 to 50 years in the Illinois State Penitentiary. Defendant urges this Court to reverse his conviction by arguing that evidence of a robbery, distinct from the

offense charged, was improperly admitted at trial, that he was denied effective assistance of counsel, and that the People did not prove him guilty beyond a reasonable doubt of the offense of murder.

We affirm.

William Driver, James Gumm, Bernie Lee, and the defendant, Harry Hayes, were indicted for the murder of Harvey Harrell. Defendant Hayes obtained a severance and was tried before a judge of the Circuit Court sitting without a jury.

Because of the issues raised on appeal, a discussion of the essential testimony used at trial is necessary for proper disposition of the case.

James Gumm, a co-indictee for the murder of Harvey Harrell, was called as a witness for the State and testified over the objection of defendant as follows. On the evening of September 20, 1969, he (Gumm), Driver, Lee and the defendant attended a party. Driver, Lee, the defendant and Gumm left the party and went to 70th and Racine to "stick-up somebody." Driver, the defendant and Gumm had guns which they had retrieved from a nearby lot. They encountered a man, later identified as the deceased, Harvey Harrell, and told him "this is a stickup." They pulled Harrell into a gangway at 70th and Aberdeen, had him lie on his stomach, and tied him up using Harrell's jacket for that purpose. Defendant and Driver then went through Harrell's pockets taking $20 to $21 from him. Lee was left behind to guard Harrell while Gumm, Driver and the defendant went off in search of another person to rob. After having no success in finding another victim, they returned to where Harrell was tied up only to discover that Lee had gone off somewhere. As Gumm and Driver were turning to leave, defendant walked over to Harrell, pointed his gun down at him, and shot him in the head. All three men ran until they came upon two men near 72nd Street and Loomis. Gumm, Driver and the defendant told the men that it was a stickup and brought them into a passageway where they were forced, at gunpoint, to lie on their stomachs while Driver and the defendant went through their pockets. One of the men had on a C.T.A. uniform. Upon hearing a car approaching and a dog barking, all three fled to their homes leaving their two most recent victims lying on their stomachs.

John Rowe, a witness for the State, testified over the continuing objections of defendant as follows. Rowe was on leave from the military and in the City of Chicago on September 21, 1969. At approximately 2:00 A.M. on that date, Rowe was standing in the street in front of his house with a friend, a Mr. Montgomery, when the two were approached by three men. One of the men brandished a pistol and ordered the pair into a gangway where they were ordered to lie on their stomachs with

their hands behind their backs. While in this position Rowe and Montgomery were robbed, and their assailants discussed killing them. Rowe identified defendant Hayes as one of the assailants, and testified that on the morning in question Montgomery was garbed in a C.T.A. uniform. One of the assailants had ripped Rowe's collar off of his jacket and was preparing to tie Rowe's hands behind his back when a noise frightened the assailants who then fled.

Cindy Barnes, an acquaintance of defendant Hayes, testified on behalf of the defense as follows. She met Driver, Lee, Gumm and the defendant about 11:00 P.M. the night of September 20, 1969. They proceeded to a party as a group and remained there until 1:45 A.M. on September 21, 1969. At that time Gumm, Driver and one of the witness's girlfriends, Renee Norman, walked down 70th Street toward their homes while Lee, defendant Hayes and the witness walked in the direction of a bus stop located at 69th and Loomis. Lee and Hayes waited there until a bus arrived at approximately 2:00 A.M.

It was stipulated that if Renee Norman was called to testify she would state that at 1:45 A.M. she left a party in the company of Lee, Driver, Gumm, the defendant Hayes and Cindy Barnes, that at the corner of 69th and Loomis she proceeded in the direction of her home with Gumm and Driver and that Lee and Hayes walked toward a bus stop escorting Cindy Barnes.

Defendant Hayes testified in his own behalf as follows. He met Driver, Lee and Gumm over the course of the evening of September 20, 1969. Although the other three were drinking wine, the defendant did not have any. The four men met Cindy Barnes and Renee Norman, and at approximately 11:00 P.M. accompanied them to a party. Defendant saw Gumm drinking vodka at the party, but had nothing of an alcoholic nature himself. Defendant stayed at the party until 1:45 A.M. at which time he left in the company of Gumm, Lee, Driver, Cindy Barnes and Renee Norman. Defendant and Lee accompanied Cindy Barnes to the bus stop at 69th and Loomis. They waited for a bus for 10 or 15 minutes. After Cindy departed on the bus neither he nor Lee saw Gumm or Driver again early that morning. Defendant denied having had a gun that evening, having discussed robbery with Gumm and the others, or having robbed or murdered Harvey Harrell.

At the close of all of the evidence both sides rested, and because the State had waived opening argument and was, therefore, precluded from making a closing argument, the defendant waived closing argument. The judge then entered a finding of guilty against defendant Hayes.

The first argument which defendant makes in support of reversal of

this case is that when the court allowed into evidence the testimony of John Rowe, which tended to establish the commission of the distinct crime of armed robbery, defendant was deprived of a fair trial.

■■ Although courts of this state have often reiterated the rule that evidence of a separate and distinct crime is reversible error when introduced only to create an inference that the accused has committed the crime charged (*People v. Cage* (1966), 34 Ill.2d 530, 216 N.E.2d 805), our courts have also held that such evidence is properly admissible if it tends to prove a fact material to the issue being tried. *People v. Ostrand* (1966), 35 Ill.2d 520, 221 N.E.2d 499; *People v. Bernette* (1964), 30 Ill.2d 359, 197 N.E.2d 436.

■■ The rationale for this rule seems to be that evidence of an accused's bad character can create such a bias in the mind of the trier of fact that all semblance of objectivity in regard to the crime charged would be obliterated. (See McCormick, Law of Evidence, ch. 17, § 157 (1954).) However, evidence that may be inadmissible for one purpose is not thereby rendered inadmissible for all purposes. (Wigmore on Evidence, 3rd ed., sec. 216.) Thus, evidence of another crime may be relevant to place a defendant in proximity to the time and place of the crime charged, to aid or establish identity of the defendant, to tend to prove design, motive or knowledge, or to prove a fact material to the issue on trial, and for any one of these purposes will be admissible. *People v. Cage* (1966), 34 Ill.2d 530, 216 N.E.2d 805.

■■ In addition to being materially corroborative of Gumm's testimony, we find that the testimony of Rowe was relevant to prove the following matters. It tended to place defendant within close proximity of the location where Harrell was murdered within a short time of when Gumm alleged the murder took place. It also tended to show a common scheme, design and pattern of which Harrell's murder was a part.

This latter point can be seen in the case of *People v. Carter* (1967), 38 Ill.2d 496, 232 N.E.2d 692. The defendant in *Carter* was being tried for murder, and testimony was admitted which tended to show the commission by defendant of an offense some seven years after the murder for which he was being tried. This latter offense was an assault on a Miss Lavery where defendant, an admitted fetishist of women's shoes, was described by the victim as kneeling in the area of her lower legs. Defendant also fired a shot at her which matched the bullet which killed Lorraine Brownstein, the victim of the murder. The court expressed its recognition of the rule that ordinarily evidence of an unrelated offense should be considered inadmissible but found that the evidence of defendant's assault on Miss Lavery was:

"[V]ery similar in significant respects to his conduct in connection

with the Brownstein murder indicating a common design and was admissible as an exception to the rule prohibiting evidence of a crime other than that for which defendant is being tried." 38 Ill.2d 496 at 505.

So also in the case at bar is the conduct surrounding the murder of Harrell and the armed robbery of Rowe strikingly similar. In both instances the victims were brought from the street into a gangway; in both instances the victims were told to lie on their stomachs with their hands behind their backs; although Harrell's hands were tied, Rowe testified that his collar had been torn from his coat which, were it not for the noise which frightened his assailants, would have been used to bind his hands behind his back. Finally, Rowe testified that his assailants were talking about killing him. These facts made it strikingly clear that the incident concerning Rowe was part of a common pattern of which the murder of Harrell was a part, both incidents occurring within minutes of each other.

■■ The cases cited by defendant in support of his position are readily distinguishable from the case before us. In defendant's cases either no exception to the general rule on the inadmissibility of evidence of other crimes was found, or it was found that any possible exception to this general rule was so tenuous that whatever probative value might have been afforded by the evidence of other crimes, its prejudicial effects far outweighed it. In this regard it is interesting to note that all of the cases cited by defendant on this point concerned jury trials. Defendant Hayes, on the other hand, was tried by a judge, who is presumed to make his findings only upon competent evidence. (*People v. Earl* (1966), 34 Ill.2d 11, 213 N.E.2d 556.) A logical corollary of this presumption is that when evidence is admitted to prove a material point, a judge will consider it only as relevant to prove that point, and ignore its tendency to prove any non-material matter. Thus, although defendant argues that any value Rowe's testimony might have had was overshadowed by its tendency to inflame or prejudice the trier of fact, we find this not to be true.

Defendant next argues that he was denied effective assistance of counsel and thus was denied due process. Defendant alleges among other things that the Public Defender waived trial by jury, omitted an opening statement, did not object to the fact that Gumm did not appear on the list of State's witnesses, did not use Gumm's statement or police report to impeach Gumm, did not object to Rowe's testimony, and waived closing argument. Not only is defendant inaccurate in certain allegations (i.e. Gumm's testimony as well as Rowe's was vigorously objected to), but defendant seems to imply that certain tactical postures,

such as waiver of opening and closing arguments, show incompetence of counsel *per se.*

■■■ Only if the record were to show actual incompetence of counsel coupled with substantial prejudice resulting therefrom, without which the outcome would probably have been different, would this court reverse defendant's conviction. (*People v. Georqev* (1967), 38 Ill.2d 165, 230 N.E.2d 351.) We find neither to be true in this case. Defendant's counsel was competent and afforded him more than adequate representation in this matter.

■■ Finally, defendant maintains that he was not proved guilty beyond a reasonable doubt of the offense of murder. He places great weight upon the fact that the most damaging testimony received against defendant was supplied by an accomplice, James Gumm, who was himself to be tried as a juvenile. Uncorroborated testimony of an accomplice is always scrutinized carefully due to its inherent weakness. *People v. Dell* (1966), 77 Ill.App.2d 318, 222 N.E.2d 357.

■■ However, even uncorroborated testimony of an accomplice who testifies that he expects leniency may be sufficient to convict. (*People v. Goad* (1966), 78 Ill.App.2d 105, 222 N.E.2d 558.) In the case at bar there was material corroboration of Gumm's testimony in the testimony of the witness Rowe. The reviewing court will not disturb a finding of guilty by a judge unless the proof is so unsatisfactory or improbable as to justify a reasonable doubt of the defendant's guilt. *People v. Diesel* (1970), 128 Ill.App.2d 388, 262 N.E.2d 15.

■■ Even though defendant took the stand in his own behalf and offered alibi testimony which was corroborated by two other witnesses, it is the province of the trial judge, sitting as trier of fact, to determine the credibility of such witnesses and the weight to be accorded their testimony. It is obvious from the finding of the judge that he chose not to believe the alibi testimony proffered at trial. *People v. Davis* (1970), 126 Ill.App.2d 255, 261 N.E.2d 771.

■■ The evidence adduced at trial was clearly sufficient to support a finding of guilt beyond a reasonable doubt. The judgment of the trial court will be affirmed.

Judgment affirmed.

DEMPSEY and McNAMARA, JJ., concur.