Elbert Austin, Plaintiff-Appellant, *v.* The City of East Moline Board of Fire and Police Commissioners *et al.*, Defendants-Appellees.

(No. 72-72;

Third District—September 27, 1972.

Walter D. Braud, of Rock Island, for appellant.

Peter H. Lousberg, of Rock Island, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from a judgment entered in the circuit court of Rock Island County which affirmed the findings of fact and the decision of the Board of Fire and Police Commissioners of the City of East Moline. The Board after an administrative hearing found the appellant, Elbert Austin, guilty of taking a 30-30 Winchester Illinois Sesquicentennial model rifle from the wall of an office building while he was on duty and making an investigation of what appeared to be a "break in." The Board ordered the appellant discharged from the police force of the city of East Moline. It is the appellant's theory on this appeal that the findings of the Board were against the manifest weight of the evidence and that the proceedings conducted by the Board were not fair and proper.

The alleged taking of the rifle occurred on April 16, 1971, at about 4:50 A.M. The appellant and a fellow officer, Gary Grafton, were on a routine patrol in their squad car when they noticed a broken window in a building owned by the H. C. Duke Company. The officers stopped to investigate and it was during this investigation that the rifle was allegedly taken by the appellant. Officer Grafton testified that he saw the rifle taken by the appellant, who stated, "I think I will take it home." He further testified that the appellant repeated this remark, then walked through the "shop area" of the building and placed the rifle behind a cart and that later when an Officer Thiron was no longer in the immediate vicinity the appellant carried the rifle from the building, entered the squad car and drove away in the general direction of his home located approximately one block or one and one-half blocks from the H. C. Duke Company building.

Officer Grafton also testified that on several occasions he attempted to prevail upon the appellant to return the rifle, but on one occasion was rebuffed when the appellant stated, "I can run it to Chicago and get a hundred bucks out of it." There was also testimony to the effect that following the investigation of the alleged theft Grafton told a fellow officer, Frank Hodshire, about the incident. The theft of the rifle was reported by Mr. Duke on the afternoon following the alleged theft and Grafton then reported the incident to the Chief of Police. The 30-30 Winchester commemorative rifle was never found.

On cross examination the witness Grafton acknowledged that he was a member of the National Rifle Association and that both he and his fellow officer Hodshire are owners of numerous guns. He denied that there had been personal strife based on racial differences between him and the appellant.

It is the contention of the appellant that the only direct evidence of the theft was the testimony of Grafton and that all other evidence considered by the Board was circumstantial. He further attempts to question the credibility of the testimony of Mr. Duke, who stated the rifle was present in his father's office on April 15, 1971, but was missing on the following day after the police investigation. The appellant argues that it is difficult to believe that Mr. Duke would keep a day to day mental log of the presence of a rifle hanging in someone else's office. By being the owner of numerous guns and a member of the National Rifle Association the appellant argues that the possession of the missing 30-30 commemorative Winchester rifle would be far more appealing to Grafton and by such argument attempts to infer that it was Grafton who in fact stole the weapon.

In a further effort to cast doubt upon Grafton's testimony the appellant

attempted to show that racial bias existed in their relationship as fellow officers.

■■■ In regard to the appellant's claim that the findings of the board that he was guilty of theft of a rifle were against the manifest weight of the evidence, we must at the outset recognize that the Administrative Review Act states that "the findings and conclusions of the administrative agencies on questions of fact shall be held to be prima facie true and correct." (Chapter 110, Sec. 274, Illinois Revised Statutes.) In the instant case the appellant fails to cite any cases in support of his argument that the Board's findings were against the manifest weight of the evidence, but instead would have us interpret the evidence in a manner different from the interpretation it received by the Board. Further the appellant attempts to establish various motives which would tend to show that Officer Grafton rather than the appellant was guilty of the charge. We are well aware of the fact that the only direct testimony against the appellant and which was controverted was that given by Officer Grafton and that all other testimony was circumstantial. However, evidence clearly places the appellant at the scene of the alleged theft, established that the rifle was missing, further showed that an Officer Thiron was ordered from the office where the rifle was located, that the appellant entered the squad car alone and drove away in a general direction towards his home. All of this circumstantial evidence corroborates the direct testimony of the witness Grafton. On administrative review the court does not weigh the evidence and its function is limited to ascertaining if the findings and decisions of the administrative agency are against the manifest weight of the evidence.

In *DeGrazio v. Civil Service Com. of the City of Chicago*, 31 Ill.2d 482, 202 N.E.2d 522, our Supreme Court stated:

"On administrative review the court does not weigh the evidence and its function is limited to ascertaining if the findings and decision of the administrative agency are against the manifest weight of the evidence * * * it is the function of the court to decide if the charges preferred against the officer are not so trivial as to be unreasonable or arbitrary, if the Commission acted on evidence that fairly tended to sustain the charges, and if its decision is related to the requirements of the service. The court cannot substitute its judgment for that of the Commission. (Etscheid v. Police Board of the City of Chicago, 47 Ill.App.2d 124, 197 N.E.2d 484)."

The Board found the appellant guilty of taking a rifle during the course of an investigation. We fail to find anything in the record which would permit us to conclude such a finding was contrary to the manifest weight

of the evidence. After Officer Grafton had informed the Chief of Police of the city of East Moline that the appellant had taken the rifle the chief then proceeded to conduct an investigation. In the process of this investigation polygraph or lie detector tests were given to the appellant, Officer Grafton and other individuals who were involved in the incident. The members of the Board of Fire and Police Commissioners prior to the hearing had knowledge of both the taking and the results of these tests. The Board, however, received no less than five admonitions to ignore the results of the lie detector tests. The first admonition was given prior to the hearing, the second at the commencement of the taking of testimony, and on two other occasions during the course of the hearing. Finally in written guidelines the members of the Board were told:

"Any evidence which is not in the record of this case cannot and should not be considered by you in arriving at your decision. Any evidence given to which an objection has been sustained or which has been ordered stricken from the record, should not be considered by you in arriving at a decision."

The appellant contends that reversible error was committed when a polygraph test was administered and that the members of the Board had knowledge of this fact plus the results of the test.

■■ The statutes prohibiting a court from requiring or suggesting that the defendant in a criminal trial or the plaintiff or defendant in a civil trial submit to a "polygraphic detection deception test" apply neither in terms nor in principle to a proceedings before a Board of Fire and Police Commissioners. (*Coursey v. Board of Fire and Police Commissioners of the Village of Skokie*, 90 Ill.App.2d 31, 234 N.E.2d 339.) In *Coursey*, the court recognized that the effective and efficient operation of a police department requires that allegations of police misconduct be thoroughly investigated and that the polygraph machine can be a useful investigative tool when the test is skillfully prepared and is administered and interpreted by a qualified person.

■■ The appellant in this appeal cites as error that there was no evidence submitted to the Board as to the qualifications of the person who administered the test, relying on *Seneca v. Board of Fire and Police Commissioners*, 71 Ill.App.2d 219, 217 N.E.2d 320, as making such evidence a requisite before the results of a lie detector test are admissible. It should be noted that *Seneca* did not pass on the issue as to whether the results of such tests were admissible in an administrative hearing. Further the appellant during the hearing before the Board did not raise the issue as to the qualifications of the person who administered the test for it was not necessary for him to do so, since no attempt was made to introduce the results of the test into evidence. We are therefore

presented with a question which is simply this: is it reversible error for the members of a Board of Fire and Police Commissioners to have knowledge that a polygraph test was given to a policeman charged with misconduct and to be further aware of the results of such test even though they were repeatedly and strictly admonished to ignore such knowledge in arriving at their decision?

■ ■ We believe that this question must be answered in the negative and we do so, thereby holding that such a set of circumstances does not constitute reversible error. That a policeman charged with misconduct may be required to submit to a polygraph test is accepted as law in Illinois. (See *Coursey v. Fire and Police Commissioners,* at p. 31.) Such a test could well exonerate the policeman under suspicion, however, the converse is also true in that should the results of a test reflect that the suspected policeman is not telling the truth, then the Chief of Police who is charged with maintaining high standards of good conduct in his department is then assisted in arriving at a determination as to whether or not charges should be preferred against the allegedly offending officer.

In the instant case it was well known to all parties concerned that the appellant had submitted to a polygraph test and that the results of such were known to the commissioners. However, no less than five admonitions were given to the Board to ignore such knowledge. Where alleged improper evidence is known to the trier of fact, an instruction to disregard it cures any possible error. (*People v. McCoy,* 133 Ill.App.2d, 273 N.E.2d 430.) We are of the opinion that in the instant case the members of the Board were properly admonished as to what evidence they could consider and that no reversible error is present in regard to the administration of the polygraph test and the knowledge of its results by the members of the Board.

■ ■ During the course of the hearing the appellant attempted to adduce testimony from a psychologist to the effect that the emotional or psychological makeup of the appellant was such as would preclude any validity being attached to the results of a polygraph examination. Such expert testimony was objected to and held to be inadmissible. We agree with this ruling of the Board because such testimony would be irrelevant and immaterial in view of the fact that the results of the test were not in evidence.

■ ■ The appellant further urges as reversible error that the proof of the ownership of the allegedly stolen rifle is insufficient. We fail to find any merit in this contention, since even in a criminal proceeding it is sufficient in proving theft that the person accused obtained or exerted control over the property of the owner. (Chap. 38, Sec. 16—1, Illinois Revised Statutes.) The term ownership is defined as "* * * a person,

other than the offender, who has possession of or any other interest in the property involved, even though such interest or possession is unlawful, and without whose consent the offender has no authority to exert control over the property." (Chap. 38, Sec. 15—2, Illinois Revised Statutes.) Without making an undue further recital of the facts, it is suffice to note that the evidence adduced was that Thomas W. Duke was manager of the H. C. Duke Company. He worked in the Duke building. He knew that his father owned and displayed the rifle in question and that it was in the company office on the afternoon and evening of April 15, 1971, but it was missing on the morning of April 16, 1971, and later, on the same day was reported to the police as missing by its owner, namely his father, Gene Duke. That this evidence was presented by the testimony of the owner's son rather than its actual owner is immaterial. (See *People v. Cross,* 40 Ill.2d 85, 237 N.E.2d 437; *People v. Davis,* 27 Ill.App.2d 33, 188 N.E.2d 43.) The evidence regarding ownership of the rifle was adequate and appellant's claim of error in regard to this issue is without merit.

■■ The appellant next contends that the conduct of the attorney for the Board was not fair and impartial during the course of the hearing. In support of this contention he cites the case of *Gigger v. Board of Fire and Police Commissioners,* 23 Ill.App.2d 433, 163 N.E.2d 541, where the court found the hearing before the Board was not fair and impartial because of the conduct of the Board's attorney who presented, interrogated and cross examined all witnesses as well as ruling on questions of law and evidence. We find no such conduct on the part of the Board's attorney in the instant case. It is abundantly clear that neither the attorney for the city nor the attorney for the appellant were in full agreement with some of the rulings and interpretations made by the attorney for the Board, but we fail to find anything in the record which would indicate that his conduct or actions were arrayed against the defendant. In fact, the conduct of the attorney for the Board was of that type which is approved of and sanctioned in the case of *Rizzo v. Board of Fire and Police Commissioners,* 131 Ill.App.2d 229, 267 N.E.2d 7.

Lastly, the appellant claims it was reversible error to allow evidence to be admitted which showed prior misconduct on his part. This issue arose as Officer Grafton was being cross examined by counsel for the appellant. The colloquy was as follows:

"Q. Have you ever seen Mr. Austin remove things on other occasions?

A. Yes, sir."

■■ On redirect examination counsel for the city elicited testimony from Officer Grafton that he had known on another occasion that the

appellant had taken a tape recorder but that he had persuaded him to return it before it was reported missing. Evidence of other occurrences, including criminal offenses, is admissible or inadmissible depending upon its relevancy. (Cleary, Handbook of Illinois Evidence, 2d Ed., pp. 205-7.) Admission of evidence of a separate and distinct crime is error when introduced only to create an inference that the accused has committed the crime charged but such evidence is properly admissible if it tends to prove a fact material to the issue being tried. (*People v. Hayes*, 3 Ill.App.3d 1027, 279 N.E.2d 768.) In the instant case defendant is in no position to complain when his own counsel opened the door as to previous misconduct on his part. But regardless of who opened the door in the instant case we deem such evidence as to prior conduct to be relevant and admissible. The disputed evidence was relevant to explain the lapse of time between Officer Grafton's observing the taking of the rifle and his reporting of the incident to his superior. The appellant in his brief stresses this delay in reporting the incident and attempts to impute bad faith and motives on the part of Officer Grafton. The commissioners were entitled to know that on a previous occasion Grafton had successfully prevailed upon the appellant to return a wrongfully taken item and therefore he did not feel compelled to promptly report the incident in question. The evidence of prior misconduct was properly received by the commission for this limited purpose.

For the reasons set forth the order of the circuit court of Rock Island County affirming the findings and verdict of the City of East Moline Board of Fire and Police Commissioners is hereby affirmed.

Order affirmed.

ALLOY, P. J., and DIXON, J., concur.