THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES STEPHEN HENRY, Defendant-Appellant.

Second District Nos. 75-474, 76-95 cons.

Opinion filed May 4, 1977.

Ralph Ruebner and Daniel Cummings, both of State Appellate Defender's Office, of Elgin, for appellant.

John J. Bowman, State's Attorney, of Wheaton (Malcolm F. Smith, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

The defendant was charged by indictment with the armed robbery on March 27, 1975, of Gale Welzel, owner of a White Hen Pantry Store in Naperville, and, in a second indictment, with the armed robbery on April 2, 1975, of Walter Harris, Jr., manager of the Open Pantry Food Store in Lisle, Illinois. After separate bench trials, the defendant was convicted of both charges, and sentenced to concurrent terms of 4 to 6 and 5 to 7 years imprisonment. On consolidated appeal from both convictions, the sole issue raised by the defendant is whether the trial court erred in refusing to suppress evidence obtained through or as the result of the warrantless search of an automobile.

The record reveals that shortly before 1 p.m. on April 2, 1975,

patrolman Stephen Brown of Woodridge monitored a dispatch from the Lisle Police Department reporting an armed robbery at the Open Pantry Store. The offender was described as a "young male, white, wearing a green coat, possibly an Army coat, with dark hair draped over the ears." Lisle and Woodridge are nearby communities connected by Illinois Route 53, which is one of the primary north-south routes in the area, and the Open Pantry Store that had been robbed was located near the corner of Route 53 and Maple Avenue in Lisle. Upon hearing the dispatch, patrolman Brown took up a position in a service station at Route 53 and 75th Street, which is approximately two miles south of Maple Avenue.

About three minutes after assuming this position, Brown observed a yellow 1970 Mustang southbound on Route 53, with two persons in it; the passenger appeared to match the robber's description. The Mustang passed within 10 feet of Brown's squad car, and Brown pulled out onto the highway and began following it. A heavy snow was falling and highway conditions were poor. The Mustang was proceeding slowly; however, it failed to stop for a red light at Boughton Road. Upon seeing the Mustang run the red light, Brown radioed for assistance, and the Mustang was pulled over by Brown and two squads from Bolingbrook.

One of the Bolingbrook officers approached the car, followed by Brown. Brown observed a large amount of loose change between the two bucket seats of the Mustang. The officers requested identification, which the occupants promptly produced. The passenger, who was a 17-year-old white male with long hair that came over his ears, wearing a green shirt, but no coat, proved to be James Henry, the defendant herein. The driver was a youth named Steven Gillespie. Officer Brown observed what he termed a "considerable amount" of loose change on the center console between the bucket seats, and noted that the defendant and his companion "were quite nervous"; however, there was nothing irregular about the identification which the defendant and Gillespie produced. The officers also checked the vehicle registration, which apparently indicated that Gillespie's mother was the owner of the car.

The defendant and Gillespie were told to get out of the Mustang. Both were searched and placed in one of the squad cars. Additional officers arrived and one of them, Sergeant Chruszczyk of Bolingbrook, searched the Mustang. The officer did not have a search warrant, or permission to search the car, and the defendant had not been advised that he was under arrest at the time of this search.

Chruszczyk looked in the glove compartment, and discovered a brown paper bag containing approximately $100 in currency and coins. As he removed the bag, a wallet fell out, which proved to be the one which had been taken from Harris, manager of the Open Pantry Store. The defendant and Gillespie were then placed under arrest and taken to the

Lisle Police Station. A revolver was found in the back of the squad car where defendant and Gillespie had been placed while Chruszczyk searched the Mustang; the State subsequently established that the revolver had not been in the squad car at the beginning of the shift, and that the revolver was identical to the one used in the two robberies.

At the police station, the defendant was advised of his *Miranda* rights and questioned by a number of officers. The officers showed him the revolver which they had found in the back of the squad car and the defendant admitted that it was his, and that he had concealed it under his shirt when the officers frisked him. He then gave a written statement, admitting the robbery of the Open Pantry Store, and stating that Gillespie had not been involved. Later, the defendant also admitted that he was the individual who robbed the White Hen Pantry Store in Naperville on March 27, 1975. The police arranged for a lineup on the same day, and both Walter Harris of the Open Pantry Store in Lisle and Gale Welzel of the White Hen Pantry Store in Naperville identified the defendant as the robber. The defendant was subsequently indicted for both armed robberies.

The defendant filed identical motions to suppress his confession and other evidence obtained by the police in each case. The motions were denied after a combined pretrial hearing.

The evidence presented against the defendant at his trial · could justifiably be described as overwhelming and no purpose would be served by detailing it here. In each case, one or more eyewitnesses identified both the defendant, and the revolver which had been found in the squad car; in addition, the defendant's confessions were admitted against him. Other physical evidence seized by the police on April 2, or later, was also admitted at one or both trials. The defendant did not call any witnesses on his behalf.

The defendant concedes that an investigatory "stop" of the Gillespie car was justified under section 107—14 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 107—14), but argues that the subsequent search was too broad to be sanctioned as a search during temporary questioning, and that there were no reasonable grounds for either the search of the automobile or the arrest of the defendant. It is the defendant's contention that virtually all of the evidence introduced against him at his two trials should have been suppressed as the "fruit" of an unlawful search. We disagree.

■■■ Where there is probable cause to believe that a crime has been committed, and that evidence of a crime is contained in an automobile, a warrantless search of the automobile may be reasonable. (*E.g., People v. Joyner* (1972), 50 Ill. 2d 302, 311; *People v. Corrigan* (1977), 45 Ill. App. 3d 502, 505; *People v. Winslow* (1975), 26 Ill. App. 3d 1035, 1041, *cert.*

*denied*, 424 U.S. 915.) Further, as we noted in *Winslow*, "[t]he validity of a search conducted pursuant to probable cause, unlike a search incidental to an arrest, is not dependent upon the existence of probable cause to arrest. [Citations.]" 26 Ill. App. 3d 1035, 1041.

The defendant places great reliance upon *In re Woods* (1974), 20 Ill. App. 3d 641. *Woods* contains dicta to the effect that a general description, standing alone, is insufficient to provide the probable cause necessary to justify an arrest. In *Woods* the offenders were described as black, about 18 years of age, weighing approximately 150 to 160 pounds, about five feet eight inches tall, with one offender wearing a long dark, red coat, and the other wearing a short jacket. The court stated that the fact that the respondent and his companion matched this description and were apprehended in the vicinity of the crime did not suffice to provide probable cause, since their attire was common among black youths in that neighborhood and their presence in the vicinity of the crime was wholly negated as a factor effecting probable cause because they were in front of respondent's house at the time of the arrest. The defendant argues that since the description of the offender in this case was even more general than the description given in *Woods* probable cause was clearly lacking.

The flaw in this argument is that it emphasizes the general nature of the description given to Officer Brown, and ignores the other factors which led the officers to believe that the Gillespie car contained evidence of the robbery. The Mustang was observed coming from the direction of the Open Pantry Store a few minutes after the robbery. Route 53, along which the Mustang was proceeding, was a primary avenue of north-south traffic in the area which passed just a short distance from the Open Pantry Store, and was a logical, or even probable, escape route for the robber. Although poor road conditions  prevented driving at any considerable rate of speed, the failure of the Gillespie car to stop at a red light raised an inference of an abnormal haste. When the officers approached the car, the defendant seemed "quite nervous." Unlike the respondent in *Woods*, the defendant here did not offer a convincing explanation for his presence in the area, which was located at a considerable distance from his home. Finally, the officers observed a large amount of change between the seats of the Mustang, such as one would expect to constitute a portion of the spoils of the robbery of a small grocery store. We have no difficulty whatsoever in holding that none of these factors, standing alone, would suffice to justify the search. At the same time, it is equally clear that the combination of all of these circumstances, together with reasonable inferences which may be drawn from them, would support a reasonable belief that the Gillespie car contained evidence of the robbery. See *People v. Carter* (1967), 38 Ill. 2d 496, 498-501 *cert. denied*, 391 U.S. 965 (search of defendant's car after traffic stop, held justified, since car was

similar to the description of car used in robbery, defendant was stopped at 3:30 a.m. and was unable to explain presence in area); *People v. Corrigan* (1977), 45 Ill. App. 3d 502 (search of glove compartment after investigatory stop approved, where officers smelled alcohol, observed damp spot on car floor, and liquid dripping from glove compartment); *People v. Huth* (1977), 45 Ill. App. 3d 910, 914-15 (search of an automobile justified by traffic violation, defendant's production of a mutilated license, and report that defendant's license was suspended); *People v. Watkins* (1974), 23 Ill. App. 3d 1054 (search of car trunk after traffic stop justified, where officer observed derringer on floor in back of car); *People v. Jordan* (1967), 87 Ill. App. 2d 338, 344-47 (general description of offender and automobile in police "look-out" message matched that of the defendant and his car, defendant pulled over for running red light near scene of crime, and failed to give satisfactory answers when questioned; held, circumstances sufficient to give officers probable cause to believe occupants had recently been involved in reported stickup).

The judgment of the circuit court of Du Page County is therefore affirmed.

Judgment affirmed.

SEIDENFELD and BOYLE, JJ., concur.