(No. 38950.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* RICHARD D. ROSSOLILLE, Plaintiff in Error.

*Opinion filed November 30, 1967.*

Ward, J., took no part.

Richard D. Rossolille, *pro se.*

William G. Clark, Attorney General, of Springfield, and John J. Stamos, State's Attorney, of Chicago, (Fred G. Leach, Assistant Attorney General, and Elmer C. Kissane and James B. Zagel, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Underwood delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, Richard Rossolille was convicted of burglary and sentenced to from 3 to 10 years imprisonment. He appeals directly to this court, alleging that his constitutional rights were violated by the refusal of the trial judge to order the suppression of evidence and that the trial court erred in finding him guilty based on the assertedly uncorroborated, perjured, and contradictory testimony of an alleged accomplice.

At approximately 2:30 A.M. on March 1, 1963, Officer Ronald Kimball was driving southbound on Emerald Street in Chicago during a routine patrol. He observed two figures in an automobile, later found to belong to defendant, which was parked with its lights out in the 8800 block. As he drew closer he saw them "duck" down. He stopped his car about

two car lengths behind defendant's car and aimed his searchlight on its rear license plate, calling in for a "license check". While Officer Kimball was awaiting a reply, William Kuesis jumped out of defendant's car and ran back to where Kimball was stopped. Kuesis told Kimball: "Give us a break. We have been drinking but we haven't done anything."

There is a conflict in the testimony as to what followed. Kimball testified that he then got out of his car, accompanied Kuesis to defendant's car and looked inside, observing Theodore Pinaglia slumped down on the back seat, defendant seated behind the steering wheel, and many packages of cigarettes strewn around the back seat and floor area of the car. Kimball also stated that he and two officers who arrived in another squad car to assist him arrested the three men and that he asked defendant where the merchandise which he observed in the car came from and defendant replied that someone walked by and gave it to him. He said that defendant refused to answer any further questions. Defendant denied that Kimball ever got out of his car, saying it was only the two officers who arrived in the other squad car that approached his car and made the arrests.

Subsequent to the arrests, defendant's car was taken to a police station and searched by Officer Kimball. Besides the packages of cigarettes, he found an electric razor, a crowbar, a pair of bolt cutters, a screwdriver, and a plastic bank. No warrant was obtained for either the arrests or the subsequent search. Defendant's motion to suppress the articles seized from his car was denied and they were all introduced into evidence at his trial.

At the trial, Thomas Brady, who operated a gas station one block west of Emerald at 8801 Halsted, testified that when he entered the station on March 1, he observed that a cigarette machine which was maintained on the premises had been opened during the previous night and that all of

the cigarettes and money were gone. He also identified some of the other articles which were recovered from defendant's car as having come from his station. Theodore Pinaglia testified for the prosecution and described the details of the burglary, which he said he committed along with defendant and Kuesis. On direct examination he stated that, on an earlier occasion, he had in open court told the same judge who presided over defendant's trial that neither defendant nor Kuesis had anything to do with the burglary, but said that he did so because defendant had threatened him and that his present testimony was the truth.

Defendant denied that he participated in the burglary, but claimed that he and Kuesis drove from defendant's west side residence to the place where they were arrested in response to a telephone call from Pinaglia in which the latter said he was stranded on the "South Side" and asked to be picked up and driven home. Defendant testified that, shortly after he and Kuesis arrived at the scene of the arrests, Pinaglia threw a large cardboard box in the back of the car and yelled "Duck". Defendant said that he did not move and that neither he nor Kuesis would start up the car and drive off as directed by Pinaglia. He denied saying that a man came by and gave him the merchandise which was found in the car. It was stipulated during rebuttal that the record of defendant's prior conviction for rape be admitted for impeachment purposes.

In support of his contention that his motion to suppress was improperly denied, defendant cites *People* v. *Lewis,* 34 Ill.2d 211, *People* v. *Catavdella,* 31 Ill.2d 382, and *People* v. *Erickson,* 31 Ill.2d 230. We have this term, in *People* v. *Brown, post,* 353, and *People* v. *Jones, post,* 427, indicated our opinion that *Cooper* v. *California,* 386 U.S. 58, 17 L. Ed. 2d 730, 87 S. Ct. 788, had altered the basis upon which a majority of this court decided *Lewis,* and we accordingly overruled *Lewis* insofar as its conclusions exceeded the requirements of *Cooper. Catav-*

*della* and *Erickson* involved the propriety of a search following an arrest for a minor traffic offense, a factor not here involved, and are clearly inapposite. This case simply presents the question of whether the police had reasonable grounds to believe that defendant, Kuesis and Pinaglia had committed a felony, for if so, the subsequent search of defendant's car cannot be said to have been unreasonable. (*People* v. *McCracken,* 30 Ill.2d 425, 429-30.) As he drove down Emerald Street at 2:30 in the morning Kimball noticed two men sitting in a darkened car. They apparently attempted to conceal themselves as he drew close to them. Then, unsolicited, Kuesis jumped out of the car, ran over to Kimball, and made the statement hereinbefore quoted. In the back of defendant's car and in plain view were some hundreds of loose packages of cigarettes which were observed either by Kimball, the other two officers, or all three of them. These facts are undisputed and are even stronger than those which we held to justify a search and seizure in *People* v. *Faginkrantz,* 21 Ill.2d 75. Furthermore, the trial judge also could have believed Officer Kimball's testimony that defendant told him that someone had walked by and given him the merchandise which Kimball claims he saw in the back of defendant's car, and the implausible nature of this statement provides additional justification for the search.

The facts that Kimball searched defendant's car outside of defendant's presence and after it had been taken to a police station and that he did not first obtain a warrant did not effect the validity of the search, as it "was closely related to the reason petitioner [defendant] was arrested." *Cooper* v. *California,* 386 U.S. 58, 17 L. Ed. 2d 730, 87 S. Ct. 788; see also, *Jones* and *Brown.*

Nor do we believe that the court erred in finding defendant guilty based on the evidence presented against him. Pinaglia's testimony was neither uncorroborated nor contradictory and we have no basis upon which to hold it con-

stituted perjury. Defendant claims that Pinaglia's testimony is the only evidence which connects him with the burglary of Thomas Brady's gas station. However, the incriminating situation in which Kimball found defendant is certainly evidence against him; and the trial court, as trier of fact, was entitled to disbelieve defendant's explanation thereof, especially since Kimball testified defendant explained it differently at the time of his arrest. Defendant's attempts to cause Pinaglia to contradict himself on cross-examination were notably unsuccessful, and there is nothing inherently improbable about Pinaglia's explanation of the reasons for his prior exoneration of defendant. The conflict in the testimony was for the judge, as the trier of fact, to resolve, and we find no reason to reverse his acceptance of Pinaglia's version of the facts. *People* v. *Williams*, 19 Ill.2d 171.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.