(No. 41521.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
THOMAS HANNA *et al.*, Appellants.

*Opinion filed March 27, 1969.—Rehearing denied May 27, 1969.*

WARD, J., took no part.

JULIUS LUCIUS ECHELES, FREDERICK F. COHN, and JO-ANNE F. WOLFSON, all of Chicago, for appellants.

WILLIAM G. CLARK, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and MICHAEL STEVENSON, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

Defendants, Thomas Hanna and Theodore Raymond Cooper, following a bench trial in the Cook County circuit court, were found guilty of burglary. Hanna was sentenced to imprisonment for a year and a day, and Cooper was admitted to probation for 3 years with the first 30 days to be served in the House of Correction. Their appeals come directly here on the basis of alleged constitutional violations. The issues are whether probable cause existed for their warrantless arrest and the ensuing search of the car trunk, and whether application of the rule that recent, unexplained possession of stolen property raises a presumption of guilt violates defendant's constitutional right to remain silent.

The latter question is easily disposed of. No objection was made by trial counsel (other than counsel here) at any time on the basis now urged. In fact, counsel for defendants initiated the stipulation that the evidence heard on the motion to suppress be considered as evidence at the trial. Constitutional claims, like other claims, may be waived, and the absence of any prior objection prohibits consideration of the alleged invalidity of the recent, unexplained possession rule. *People* v. *Hubbard,* 38 Ill.2d 104, 110; *City of Chicago* v. *Joyce,* 38 Ill.2d 368, 371-72.

Resolution of the probable cause issue requires reference to the facts. Essentially uncontroverted are the following: Sergeant Ward of the Evergreen Park police department

testified that subsequent to a recent burglary in that community an identified resident living near the burglarized premises reported to the Evergreen Park police that he had seen 2 men in a described auto and heard their conversation which seemed suspicious to him. The car was a 1963 red Ford Falcon with 1966 Illinois license No. 921-183. The record owner of this car proved to be Sandra Blottiaux, known by the police to be the sister of 3 known criminals. Sergeant Ward placed the car under surveillance for about a week prior to April 2, 1966. About 8:00 P.M. that evening he noticed a man he knew to be defendant Hanna and another man he later learned to be Cooper get into the car. He noticed the car had a license plate different from the one earlier seen, and he followed the car north on the Tri-State Tollway until it reached Dempster Street. There it left the tollway and moved east on Dempster Street, stopping at a gas station. The sergeant also stopped at the gas station and learned the 2 men had asked for directions to Skokie. He then called the Skokie police department and told the dispatcher the 2 men were in the vicinity, furnishing their descriptions and a description of the car. He then drove to the Skokie police department headquarters, where he met with Lieutenant Cleburne and gave him all the information which he had regarding both men. Sergeant Ward then returned to Evergreen Park.

Lieutenant Cleburne's testimony corroborated that of Sergeant Ward as to the communication from the latter. Additionally, however, the lieutenant testified that Sergeant Ward told him one of the occupants of the car, Hanna, was a known burglar. This information was relayed by Lieutenant Cleburne to the Skokie officers, following which he called the Niles police department and surrounding communities, giving the same information to them. Sergeant Langder, a Skokie police officer, also testified to the communication with Sergeant Ward, and stated that immediately after receiving the sergeant's telephone call Lieutenant

Cleburne instructed "our cars to call our station and when they telephoned into the station they were given the information in question." At 10:12 that evening, Sergeant Langder received a call regarding a burglary in process in Skokie. He responded to the call, arriving at a two-story brick home at 10:15 P.M. He there found open about 10 inches a rear window just above a small lean-to shed. He spoke to the caller who stated that he lived one house east and had observed a person, whom he described, standing on top of the lean-to and lifting the window. Sergeant Langder then notified Lieutenant Cleburne of the situation including the description of the subject. This communication was made over the police car radio, *i.e.*, from Sergeant Langder's car to Lieutenant Cleburne's who was also out on a call at that time. The investigation was completed at 11:00 P.M. and at this time Sergeant Langder was advised by radio that Niles detectives had stopped the Falcon auto.

Vigorously attacked is part of the testimony of Niles Police Lieutenant Edward Dennis. He stated that his first knowledge of the auto in question was furnished by 2 separate telephone calls from Lieutenant Cleburne who gave him the information provided by Sergeant Ward and in particular a description of the car and its occupants. Lieutenant Dennis did not testify that he was informed that one of the car's occupants was a known burglar, but he was not specifically questioned as to this. After receiving the second telephone call Lieutenant Dennis testified that he and Niles Sergeant Golbach left the Niles police headquarters and took up a position on Dempster Street. While there Lieutenant Dennis testified that he received a radio message that the car in question had been seen leaving the area of an attempted burglary by a Skokie police officer and was last seen going west on Dempster. It is this testimony regarding the radio message which is challenged by defendants. Lieutenant Dennis did not know which of the 28 Skokie officers on duty that night had furnished the information.

About 35 to 40 minutes after receiving the radio message Lieutenant Dennis and Sergeant Golbach observed and stopped a vehicle containing two white males which fit the description previously given them. Using his flashlight Lieutenant Dennis was able to see a pair of worn leather gloves and a multiple purpose instrument, one use of which was a glass cutter, on the dash board. On the rear floor behind the passenger seat the witness saw a pair of work gloves, a flashlight and a fork with the tongs bent. Lieutenant Dennis looked into the glove compartment, which Sergeant Golbach testified was open, shortly after the passenger, Hanna, was removed from the car and discovered a roll of masking tape and a mallet, the head of which was covered with masking tape. When asked their names and for some identification, Hanna responded by suggesting: "Let's go down to the station and we'll get this straightened out."

Other police officers who had arrived to assist aided in transporting defendants and the car to the Niles police station where a locksmith opened the trunk of the car about one-half hour later. In the trunk were articles subsequently identified as taken in a burglary committed earlier that evening in Wilmette, and it is from their conviction of this burglary that defendants now appeal.

Niles Police Sergeant Golbach, who was with Lieutenant Dennis at police headquarters when the 2 telephone calls from Lieutenant Cleburne were received and who was in the squad car with Lieutenant Dennis, also testified. Although he generally corroborated the testimony of Lieutenant Dennis, he did not mention the challenged radio message nor was he questioned specifically about it on either direct or cross-examination. The report made out by officers Golbach and Dennis some hours following the arrest contained no reference to the radio message.

Defendants vigorously urge that Lieutenant Dennis testified falsely regarding receipt of the radio message which indicated a car answering the Falcon's description had been

seen leaving the area of a burglary; and that, absent this message, no probable cause for the arrest existed. As evidence of its falsity they call attention to the fact that Sergeant Golbach, who was with Lieutenant Dennis, did not mention such message in his testimony; that the written report of their investigation prepared by the sergeant and approved by the lieutenant omitted any reference to the message; that Sergeant Langder, the Skokie police officer who investigated the "burglary in process" call, made no reference to the Falcon being seen near the area from which the call came; that Lieutenant Dennis did not know which of the Skokie officers had relayed the information forming the basis for the radio message the lieutenant testified he received; no other officer was presented by the prosecution who had made or heard the call or radio message; and no police radio logs were offered indicating such a radio message was sent. Opposed in some degree to these facts are these additional facts: Sergeant Golbach was not specifically asked whether he heard the radio message; Lieutenant Cleburne testified that he was not in his police car at all times during the period when the message was transmitted; that, while it was Sergeant Langder who answered the "burglary in process" call, numerous other police cars were on the Niles streets, and, conceivably, another car near that area might have observed the Falcon and reported it; that Lieutenant Dennis was a veteran police officer with 12 years experience, characterized in defendants' brief as an experienced and competent police officer; that the police report was approved by him about 5:30 A.M. after almost a full night's work.

The rules that a warrantless arrest may be made on the basis of probable cause and that a warrantless search may be made incidental to a valid arrest have been too often stated by us to require extended reiteration here. (*People* v. *Georgev*, 38 Ill.2d 165; *People* v. *McCrimmon*, 37 Ill.2d 40.) Whether probable cause existed must be governed by

the totality of the facts and circumstances in each case. (*People* v. *Erickson,* 31 Ill.2d 230.) Here we have no essential dispute in the facts up to the point of the controversial radio message from Niles police headquarters. At that point Lieutenant Dennis was aware of the following factors: (1) The car in question had been identified by an *in*formant who indicated that it may have had some connection with a recent burglary in Evergreen Park, (2) its license was registered in the name of the sister of three known criminals, (3) on April 2, 1966, the car was bearing license plates different from those which had been displayed upon it for the previous 4 days, (4) the auto was a considerable distance from the owner's residence, occupied by 2 men, one of whom apparently had been represented to Lieutenant Dennis to be a known burglar and it was being operated without a license plate light. In our judgment these facts justified the action of the officers in stopping the car and questioning its occupants. (*Georgev; McCrimmon.*) If additional support for this action were thought necessary, however, the testimony of Lieutenant Dennis relating to the radio message is not without probative value. The fact that some witnesses did not hear that message and that others did not state whether they heard it or not does not destroy the value of the lieutenant's positive testimony that he received the message. Rather, a question as to his credibility is raised, and resolution of questions of credibility is for the trier of facts. (*People* v. *Clark,* 30 Ill.2d 216; *People* v. *McCreary,* 29 Ill.2d 295; *People* v. *Dillon,* 24 Ill.2d 122.) The trial judge apparently chose to believe the lieutenant, and his evaluation will not be disturbed by us on the basis of conflicting evidence. *Clark.*

Defendants contend that, even if they were lawfully arrested, the search of the car trunk at a place remote from the arrest and without a warrant was not constitutionally permissible. That search was made shortly after the vehicle had been taken to the police station, apparently about mid-

night. The test of the validity of the search is not, of course, whether a warrant could have been secured. Rather, the test is whether the search without a warrant was reasonable. (*Cooper* v. *California,* 386 U.S. 58, 62, 17 L. Ed. 2d 730, 733, 87 S. Ct. 788; *United States* v. *Rabinowitz,* 339 U.S. 56, 66, 94 L. Ed. 653, 660, 70 S. Ct. 430.) Defendants argue that we "have interpreted Cooper as justifying all searches of the cars in which defendants were arrested, even though such occurred at times and places remote from the arrests", and, citing *Dyke* v. *Taylor Implement Mfg. Co.,* 391 U.S. 216, 20 L. Ed. 2d 538, 88 S. Ct. 1472, urge us to reconsider our cases which have relied on *Cooper* and have sustained searches not contemporaneous with the arrest. (See *People* v. *Rossolille,* 38 Ill.2d 316; *People* v. *Brown,* 38 Ill.2d 353; *People* v. *Jones,* 38 Ill.2d 427; *People* v. *Carter,* 38 Ill.2d 496; *People* v. *Pickett,* 39 Ill.2d 88; *People* v. *Nugara,* 39 Ill.2d 482; *People* v. *McKnight,* 39 Ill.2d 577; *People* v. *Robinson,* 40 Ill.2d 453; *People* v. *Weaver,* 41 Ill.2d 434, filed November 22, 1968.) We perceive nothing in *Dyke,* however, necessitating any change in our interpretation of *Cooper.* By contrast with our facts, the evidence in *Dyke* clearly indicated that the officer who arrested defendants had no such description of the car occupied by the individuals who committed the offense for which defendants were there convicted as would have justified an arrest for that crime. The evidence there supported only an arrest for reckless driving, an offense to which the subsequent search of the car bore no relationship. The court there stated: "Automobiles, because of their mobility, may be searched without a warrant upon facts not justifying a warrantless search of a residence or office [citing cases]," noting, however, that such action required the existence of " 'reasonable or probable cause' to believe that they will find the instrumentality of a crime or evidence pertaining to a crime before they begin their warrantless search." (391 U.S. at —, 20 L. Ed. 2d at 543, 88 S. C. at 1475.) It is clear

to us that the invalidity of the search at the courthouse of the *Dyke* car was not due to its remoteness from the place of arrest but, rather, to the absence of any probable cause to believe such search would be fruitful.

By contrast with *Dyke* we have here adequate grounds for an arrest as well as discovery, at the time the car was stopped, of tools and materials on the dash, floor and in the apparently open glove compartment of the car which were suitable for burglary purposes. In our judgment the ensuing search of the car trunk at the police station was more than adequately supported by "reasonable or probable cause to believe that they will find the instrumentality of a crime or evidence pertaining to a crime." *Dyke; Cooper; State* v. *Perez,* 79 N.M. 417, 444 P.2d 602; *Reagan* v. *State,* 4 Md. App. 590, 244 A. 2d 623.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

Mr. Justice Ward took no part in the consideration or decision of this case.