(No. 41651.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
THOSTON MOREHEAD, Appellant.

*Opinion filed May 20, 1970.*

SAM ADAM and EDWARD M. GENSON, both of Chicago, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General, and ELMER C. KISSANE and JOSEPH ROMANO, Assistant State's Attorneys, of counsel,) for appellee.

Mr. JUSTICE BURT delivered the opinion of the court:

Defendant, Thoston Morehead, was convicted of the charge of criminal damage to property in a bench trial in the circuit court of Cook County and placed on probation for two years, the first 30 days to be spent in confinement in the house of correction. He appeals directly to this court alleging, *inter alia,* a violation of his constitutional right against self-incrimination. Since it is also claimed that the evidence does not prove guilt beyond a reasonable doubt a brief review of the testimony is necessary.

Harold Mally, a police officer, testified that he was on duty in a patrol car at about 8:30 P.M. December 12, 1967, when he received a call. Thereafter he drove about a block

and parked near a telephone booth located in the vicinity of 4000 West Cermak Road. From a distance of about 30 feet he observed a person in the booth who lifted an object from the center of the enclosure and set it down on a ledge. After watching the activity within the booth for about four minutes, the officer left his car and walked to the booth where he found the defendant inside. The top of the phone had been taken off and placed on a ledge. This was not its normal position. The system inside the instrument had been exposed and could be seen with the naked eye. Two screwdrivers lay on the floor and defendant had cloth gloves on his hands. The officer placed defendant under arrest and advised him of his rights, after which he asked him what he was doing there. Defendant stated that he was making a phone call. At the time of his arrest defendant had about $103 on his person—two $50 bills and $3 in change.

Paul Hassel, a special agent for the telephone company, testified that the damage to the instrument in question amounted to $85. An alarm system had been installed connecting the telephone with the central office of the company. Whenever the equipment was disturbed or tampered with a light and buzzer would be activated. Over objection Hassel testified that he had been notified that the alarm for the booth in question had come on at about 8:30 P.M. and that as a result the police were notified.

The defendant testified that after getting out of an automobile in which he had ridden with some friends after a card game, he went to the telephone to call his wife or a cab; that as he placed a dime in the instrument it started falling, so he lifted it and placed it on the ledge and that he was arrested immediately thereafter. He further stated that he had won heavily in the card game and had about $720 on his person at the time. His friends had wanted him to go to another game but he had refused because he had already won and it didn't make sense to go to another game. He admitted he had had a conversation with agent Hassel

but denied that he had told Hassel he had been out with a woman. He was not sure whether he told the agent he had been in a card game but thought he had. Defendant denied that he had any screwdrivers in his possession or that he had tampered with the telephone.

Charles Sanders and Archie Cole testified that they had been in a card game with defendant beginning at about 3:00 P.M. on the date in question; that in the evening they requested he go with them to another card game but he refused, stating he had to meet his wife. They let him out of their car at about 4000 Cermak Road. They last saw him about 8:25 P.M. Cole stated that defendant had six or seven hundred dollars in his pockets.

In rebuttal Paul Hassel testified that he had spoken with defendant at the police station on the evening in question. Defendant's counsel objected to the admission into evidence of any statements made by defendant to Hassel unless it was shown that defendant had been advised of his rights and warned of the consequences in compliance with the guide lines specified in *Miranda* v. *Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. The witness testified that he had "warned defendant of his constitutional rights". The trial court ruled that Hassel was not required to admonish defendant since he was not a policeman. The witness then testified that defendant explained his presence in the neighborhood of the phone booth by saying that he had a girl friend he went to visit. Defendant did not tell the witness he had been in a card game.

The trial court held that the evidence adduced establishes the guilt of defendant beyond a reasonable doubt. It is the function of the trier of facts to determine the credibility of the witnesses and its finding of guilty will be disturbed only where the evidence is so unsatisfactory as to leave a reasonable doubt as to defendant's guilt. (*People* v. *Hampton*, 44 Ill.2d 41, 45.) The testimony of a single witness, if it is positive and the witness credible is sufficient to

convict even though it is contradicted by the accused. *People* v. *Guido,* 25 Ill.2d 204, 208-9; *People* v. *Pride,* 16 Ill.2d 82, 90.

As we see it the testimony of Officer Mally clearly demonstrates defendant's guilt in spite of defendant's denial that he tampered with the telephone. This conclusion is strengthened when we consider defendant's attempted explanation of his presence at the scene of the crime. He would have us believe that he entered the phone booth only to make a call when the instrument, in effect, fell apart in his hands. This court has often stated that when a defendant elects to explain his presence at the scene of an offense it is incumbent upon him to tell a reasonable story or be judged by its improbabilities. (*People* v. *Songer,* 28 Ill.2d 433, 437; *People* v. *Davis,* 27 Ill.2d 33, 37; *People* v. *Lobb,* 17 Ill.2d 287, 294; *People* v. *Malmenato,* 14 Ill.2d 52, 60.) The trier of fact is entitled to disbelieve defendant's explanation of the incriminating circumstances in which he was found especially in view of testimony that defendant had told a different story at the time of his arrest. (*People* v. *Rossolille,* 38 Ill.2d 316, 321.) Defendant's account of his presence in the phone booth in this case must be weighed in the light of the testimony that he was observed in the booth for at least four minutes, which is scarcely consistent with a discovery that the phone is out of order, and the further testimony that the property was damaged to the extent of $85. There is the further circumstance of the discrepancy between having allegedly been in the neighborhood to visit a girl friend and having been let out of a car after a card game supposed to have lasted over five hours. Considering this evidence in its entirety we are satisfied that the conclusion reached by the trial judge is fully justified.

In *Miranda* v. *Arizona,* 384 U.S. 436, 445, the United State Supreme Court carefully explained that the constitutional issue being decided was the admissibility of statements obtained from a defendant questioned while in cus-

tody or otherwise deprived of his freedom of action in any significant way and that in each of the cases involved statements had been obtained after questioning by police officers, detectives or a prosecuting attorney. The opinion further states that in none of these cases was the defendant given a full and effective warning of his rights at the outset of the interrogation process. At page 444 the court was very explicit in defining its concept of custodial interrogation: "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."

Under the circumstances present here we find that it was not incumbent upon the witness Hassel to warn defendant of his constitutional rights prior to conversing with him at the police station. In the first place it is undisputed that such warnings were given to defendant by officer Mally at the time of arrest. Since such warnings were given at the outset of interrogation as *Miranda* requires it was not necessary that they be repeated every time and on every occasion anyone might subsequently talk with the defendant. (*Cf. United States* v. *Mansfield* (7th cir.), 381 F.2d 961, 963.) Secondly, there is nothing in the record which shows that the statements related by Hassel came as a result of questioning initiated by law enforcement officers. The record shows that Hassel was an agent of the telephone company which owned the property and there is nothing to show that anyone other than Hassel and defendant were present at the time of the conversation between them. In *McElroy* v. *State* (Miss., 1967,) 204 So. 2d 463, 465, the court specifically rejected defendant's contention that the *Miranda* warnings must be given in order to render his confession, given to the owner of stolen cattle, admissible where made after defendant's arrest and while he was in custody. There as here the statement was made in the police station to a private individual who was the owner of the property. In *Schaumberg*

v. *State* (1967), 83 Nev. 372, 432 P.2d 500, 501, the court observed that the thrust of the decision in *Miranda* was aimed at the "potentiality for compulsion found in custodial interrogation initiated by police officers" and held that the admonitions of *Miranda* do not apply when admissions otherwise admissible are given to persons who are not officers of the law or their agents. Other decisions illustrative of the same rule are *State* v. *Little* (1968), 201 Kan. 94, 439 P.2d 387, 391; *Holston* v. *State* (Fla. 1968), 208 So.2d 98, 100, and *Truex* v. *State* (1968), 282 Ala. 191, 210 So. 2d 424, 425. For a collection of cases see: Ann. 31 A.L.R. 3d 656, 666-669. It follows that the statements made by defendant to Hassel were admissible and no violation of constitutional rights is involved in the absence of an assertion of compulsion or duress.

Defendant claims that he was precluded by the trial court from making a closing argument and that the judge improperly heard evidence concerning defendant's prior criminal record before finding him guilty. The record shows that the court proceeded to consider defendant's record after counsel for both sides announced that they had nothing further to say. Neither gave an indication that a closing argument was desired. Moreover, defense counsel brought out points in mitigation, thereby joining in the inquiry into circumstances in aggravation and mitigation. No prejudice appears in these proceedings.

As to the claim of hearsay in connection with Hassel's testimony concerning the setting off of the alarm, it need only be said that the error, if any, was harmless and would not require reversal. It is not the policy of this court to reverse a judgment of conviction merely because error was committed unless it appears that real justice has been denied or that the finding of guilty may have resulted from such error. (*People* v. *Helm*, 40 Ill.2d 39, 47; *People* v. *Armstrong*, 22 Ill.2d 420, 424.) In this case officer Mally's testimony is sufficient in and of itself to support a finding

of guilty. He observed the defendant and personally discovered him in the incriminating circumstances. It matters not how the officer happened to come to the scene or that it was an alarm from the booth which triggered the chain of events which brought him there.

The judgment is affirmed.

*Judgment affirmed.*