THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD LEE BABIC, Defendant-Appellant.

(No. 71-318;

Second District—August 23, 1972.

E. Roger Horsky, of Defender Project, of Elgin, (Matthew J. Moran and Kenneth L. Gillis, of counsel,) for appellant.

William J. Scott, Attorney General, of Springfield, and William R. Ketcham, State's Attorney, of Elgin, (James B. Zagel, Assistant Attorney General, and Leo Wotan, Jr., Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

Defendant was indicted for intimidation and attempt (theft), found guilty in a jury trial, convicted and sentenced to a term of not less than one year nor more than five years in the penitentiary.

His appeal was originally filed in the Supreme Court which ordered it transferred to this court. Three issues are raised, namely: (1) that the evidence was insufficient to prove defendant's guilt beyond a reasonable doubt; (2) that it was error to admit into evidence a gun found in defendant's automobile; and (3) that the prosecutor abridged defendant's right to testify or decline to testify.

We first review the evidence briefly in connection with defendant's claim that it was insufficient to support a conviction. George Neumark, a former mayor of St. Charles, Illinois, and owner of several cleaning and laundering plants in the area received a series of threatening phone calls. The caller told him that due to a city action the caller's father had lost $11,400, had passed away grieving about it, and that Neumark was to get that amount and would be told what to do with it. Otherwise, the caller said, he would bomb Neumark's place of business and harm his two sons.

Neumark informed the police who placed a recorder on his phone and were present on the night of September 16, 1969, when instructions were given to place the money in a bag and drop it at a particular sign indicating a sharp curve in Tyler Road, a rural location without lighting. The police had prepared a packet of currency in excess of $400 and stage money which was placed in a brown paper bag. Neumark drove to the described location with two detectives in the back of his car, passed it once and returned on the opposite side of the street. He walked across the road, placed the back on the grass between the paved road and a fenced cornfield, and then drove home. Meanwhile, the detectives

had alighted from the opposite door and secluded themselves in the cornfield directly across the road from the paper bag containing the money.

Various members of Babic's family had worked for the victim, and Neumark knew Richard Babic, having employed him in his laundry for seven months prior to July, 1964. He recognized that the calls were made by the same person, but did not recognize the voice as Babic's. Some of the calls were traced to phones in public places in the area.

A police officer sitting in a squad car parked some distance away from the prearranged drop spot observed a car of the same description as defendant's travel north on Tyler Road, and then five or six minutes later, travel west on another street and turn back south on Tyler Road. The men watching the bag at the side of the road saw the car pass going north, and return two or three minutes later going south. It drove about 50 feet past the spot, braked, came to a screeching halt, and backed up. The driver, alone in the car, was seen looking to the right and to the left before and after he got out of the car. Babic walked over to the bag, picked it up and was carrying it back to his car without having opened it or looked into it when he was arrested.

Babic gave an officer permission to drive his car to the station, but was not asked for permission to search it. Within ten minutes after driving it into an enclosed area at the police station, the officer testified he again opened the door and saw a gun lying at the end of an arm rest folded down upon the middle of the front seat.

Various members of Babic's family testified he had not made phone calls at the time specified in the indictments, several occasions being family birthday celebrations. Babic had a radio capable of receiving police calls but did not have it with him on the night of his arrest. His wife said she had the gun in the car that day for her own protection while visiting her mother in an integrated neighborhood and had not told her husband about it. They were in financial difficulties during August and September, 1969, and threatened with a mortgage foreclosure.

Ray Summers, a St. Charles policeman, and real estate salesman, testified he was acquainted with defendant through his former employment and his wife's babysitting for defendant's son. Defendant had occasionally visited him at the police station, Summers said, and at some time had spoken to Summers about selling his house although Summers had not seen the house.

In his own behalf, defendant testified that he drove his wife's car that night to the St. Charles police station where he asked when Summers would be in, then later drove back looking for Summers' car. He didn't

know the gun was in the car, had been convicted of a felony at sixteen years of age, noticed the bag standing straight up at the side of the road and picked it up out of curiosity.

■■■ The guilt of an accused and the credibility of witnesses is for determination by the trier of fact. A jury may disbelieve defense testimony, and its judgment will not be set aside unless it is palpably contrary to the weight of the evidence or so unsatisfactory as to leave a reasonable doubt of the defendant's guilt. *People v. Morehead* (1970), 45 Ill.2d 326, 329, 259 N.E.2d 8; *People v. Wilson* (1970), 45 Ill.2d 581, 586, 262 N.E.2d 441; *People v. Sumner* (1969), 43 Ill.2d 228, 232, 252 N.E.2d 534; *People v. Nicholls* (1969), 42 Ill.2d 91, 95, 245 N.E.2d 771.

■■ We conclude from our consideration of the evidence and the legitimate inferences reasonably to be drawn therefrom, that there is sufficient support for the jury's guilty verdict. Neumark, in a phone call received at his home at 9:50 P.M. on September 16, 1969, was directed to place a bag of money at a particular curve sign on Tyler Road. Within the hour, at 10:30 to 10:45 P.M., Babic was arrested with the bag in his hands and a gun in his car. He had passed and returned to this unlighted, rural spot, and was seen looking to the right and the left before and after alighting from his car. He had once worked for Neumark, and at the time of arrest was having financial difficulties. The evidence includes a photograph of a similar sized bag standing in the grass along the side of the road. A jury could reasonably decide it was not an object likely to attract the attention of a curious night motorist.

The issue of admissibility of the gun was tested in the trial court by a pre-trial motion of suppression and hearing thereon. Jones, the detective that drove Babic's car from the curve in Tyler Road into an enclosed garage within the police station, testified that he returned to the car within ten minutes of the time Babic was brought into the station and taken to the interrogation room. Jones' intention was to inventory personal property contained in the car, and he had no search warrant. Jones testified that he and another officer opened the car doors and a gun was found just slightly inside an arm rest folded down on the middle of the front seat. Jones said the gun was in plain view, and he didn't have to open up the arm rest to see it. Babic testified that although he did not know the gun was in the car at this particular time, when it was, it was normally kept in a pocket of the arm rest.

■■ The validity of the search of the car and the seizure of the gun it contained is an important issue in this appeal. The record, we believe, would justify admission of the weapon on the "plain view" doctrine, but we resolve the question by deciding whether the search was a

constitutionally reasonable one. This requires some review of an evolving area of the law.

Defendant contends the search involved was not contemporaneous in time and place with defendant's arrest and thus cannot be justified as a search incident to a lawful arrest, citing *Preston v. United States* (1964), 376 U.S. 364, 11 L.Ed.2d 777, 84 S.Ct. 881; *People v. McGhee* (1966), 35 Ill.2d 302, 220 N.E.2d 205; and *People v. Gates* (1966), 35 Ill.2d 584, 221 N.E.2d 285. It is conceded, however, that there is no question that the arrest of defendant on Tyler Road was made with probable cause.

*Preston* held that searches of motorcars must meet the test of reasonableness under the Fourth Amendment before evidence obtained as a result of such searches is admissible and said that common sense dictates that questions concerning searches of motorcars or other things readily moved cannot be treated identically with searches of fixed structures like houses. The *Preston* court went on to distinguish a search contemporaneous with arrest from a search remote in time and place from the arrest, and held that once the defendant had been taken into custody and his car towed to a garage, search without a warrant failed to meet the test of reasonableness under the Fourth Amendment because the search was too remote in time or place to have been made *incidental to the arrest*.

Defendant's cited cases of *McGhee* and *Gates* followed the reasoning of *Preston v. United States, supra,* and *People v. Lewis* (1966), 34 Ill.2d 211, 215 N.E.2d 283, in holding searches of automobiles unreasonable. The *Lewis* rationale was that the particular auto search complained of was accomplished after the defendant was taken into custody and was therefore totally unnecessary to protect the arresting officers or prevent escape. Also, it was not possible for defendant to dispose of evidence before a search warrant was obtained, since the police took possession of the car at the time they took custody of the defendant.

In *People v. Brown* (1967), 38 Ill.2d 353 at 356 and 357, 231 N.E.2d 577, the court stated that the majority of the *Lewis* court had felt compelled by the language of the United States Supreme Court in *Preston* to invalidate a warrantless search of an automobile after a defendant had been taken into custody and the car impounded, but that subsequently *Cooper v. California* (1967), 386 U.S. 58, 17 L.Ed.2d 730, had clarified the *Preston* rule. Although the facts in *Cooper* were distinguishable, on its language, the court in *Brown* felt free to consider the reasonableness of the search even though it occurred after the defendant had been arrested and taken into custody. *People v. Jones* (1967),

38 Ill.2d 427, 432, 433, 231 N.E.2d 580, held that the mere fact that defendant is in custody and his car impounded does not in itself invalidate a warrantless search, and overruled *Lewis* and other similar cases, such as *People v. McGhee* and *People v. Gates,* insofar as they state a contrary conclusion. *People v. Brown, supra,* approved the test of *United States v. Rabinowitz* (1950), 339 U.S. 56, 66, 94 L.Ed.653, 660, 70 S.Ct. 430, that is, not whether it is reasonable to procure a search warrant, but whether it is reasonable under the Fourth Amendment to search without a warrant. *Brown* followed *People v. Watkins* (1960), 19 Ill.2d 11, 166 N.E.2d 433, in basing that determination on an examination of all the facts surrounding the arrest and the search.

The *Brown* and *Jones* rationale, that a warrantless search of an impounded automobile while defendant is in custody, is not *per se* invalid or unreasonable, was thereafter consistently followed in *People v. Rossolille* (1967), 38 Ill.2d 316, 231 N.E.2d 585; *People v. Carter* (1967), 38 Ill.2d 496, 232 N.E.2d 692; *People v. Nugara* (1968), 39 Ill.2d 482, 236 N.E.2d 693; *People v. McKnight* (1968), 39 Ill.2d 577, 237 N.E.2d 488; *People v. Robinson* (1968), 40 Ill.2d 453, 240 N.E.2d 630; *People v. Weaver* (1968), 41 Ill.2d 434, 243 N.E.2d 245; and *People v. Hanna* (1969), 42 Ill.2d 323, 247 N.E.2d 610.

■■■ Defendant in this case concedes probable cause for arrest but relies on the theory that warrantless search of his automobile was invalid because not contemporaneous with that arrest. He overlooks and has not discussed an alternative and wholly different theory concerning the validity of such searches, that is, whether probable cause existed for the search. It is well established that a search without a warrant may be made incidental to a lawful arrest, and the boundaries of such a search were delineated in *Chimel v. California* (1969), 395 U.S. 752, 766, 23 L.Ed.2d 685, 695, wherein it was stated that the search may not go beyond the area from which the person arrested might obtain weapons or evidentiary items. Applying the *Chimel* test to the circumstances of this case, we find that search of defendant's auto cannot be justified as incidental to his arrest because the evidence is that defendant was arrested as he "came back middleways of the car between the two headlights."

■■ Consequently, we consider the distinctive theory, whether there was probable cause for the search. *Carroll v. United States* (1925), 267 U.S. 132, 45 S.Ct. 280 stated that the right to search (an automobile) and the validity of the seizure are not dependent on the right to arrest. It can be grounded on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law.

■■ This separate ground of validity was recognized in *People v.*

*Carter, supra,* and *People v. Nugara, supra,* where the automobile was said to be closely related to the offense for which defendant was arrested. Defendant's automobile in this case was the means of transporting him to the drop spot on Tyler Road where his arrest occurred, giving the officers probable cause to reasonably believe the car might contain a weapon or other evidence concerning the intimidation of the victim. The circumstances were exigent, we hold there was probable cause to search the vehicle, and proceed to consider the law in this area.

*Carroll v. United States, supra,* discussed the practicability of securing a search warrant before the vehicle could be moved out of the jurisdiction. The later opinion of *Chambers v. Maroney* (1970), 399 U.S. 42 26 L.Ed.2d 419, 90 S.Ct. 1975, reaffirmed the holding of *Preston v. United States, supra,* that once an accused is under arrest and in custody, then a warrantless search made at another place is simply not incidental to an arrest; but the court also recognized the alternative ground justifying search, saying there was probable cause to believe that guns and stolen money might be contained in the car. In *Chambers,* the court stated that a search warrant is unnecessary where there is probable cause to search an auto stopped on a highway, as the car is movable, the occupants alerted, and the car's contents may never again be found if a warrant must be obtained. The court then held that if there is probable cause to search a car on the highway, the probable cause continues when possession of the car is taken by the police and the car is removed to the police station. If there is probable cause to search a car, the court found no constitutional difference between seizing and holding it before presenting the probable cause issue to a magistrate for the purpose of obtaining a search warrant, and permitting an immediate search of the car at the station without a warrant. Given probable cause, the court held either course to be reasonable under the Fourth Amendment. This analysis of the *Chambers* holding was set out in our opinion in *People v. Ricketson* (1970), 129 Ill.App.2d 365 at 374, 264 N.E.2d 220.

The recent opinion of the United States Supreme Court in *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 29 L.Ed.2d 564, 91 S.Ct. 2022, was discussed by the Supreme Court of Illinois in *People v. Canaday* (1971), 49 Ill.2d 416, 275 N.E.2d 356. In *Canaday* the court stated at 49 Ill.2d 422 that the United States Supreme Court had drawn a distinction between *Chambers* which corresponded to *Canaday* and the question in *Coolidge.* It cited the following portion of the *Coolidge* opinion.

" 'The rationale of *Chambers* is that given a justified initial intrusion, there is little difference between a search on the open highway and a later search at the station. Here, we deal with the prior question of whether the initial intrusion is justified. For this purpose, it seems

abundantly clear that there is a significant constitutional difference between stopping, seizing, and searching a car on the open highway, and entering private property to seize and search an unoccupied, parked vehicle not then being used for any illegal purpose.' *Coolidge v. New Hampshire* 403 U.S. 433, n. 20."

The Illinois Supreme Court, in discussing the United States Supreme Court opinion in *Chambers,* said at page 421:

"* * * The Supreme Court rejected the contention that search without a warrant at the police station was improper. It was observed that the auto which could have been properly searched on the highway could as well be searched without a warrant at the police station, because the probable cause to search it continued. The movement of the vehicle to the station did not create any duty to secure a search warrant."

See also *People v. Smith* (1972), 50 Ill.2d 229, 231 and 232, 278 N.E.2d 73, where the Illinois Supreme Court, while holding that it would have been preferable to have obtained a search warrant, nonetheless the evidence obtained by a warrantless search of the vehicle some six hours later after the car had been locked in a garage in another town, was held admissible.

The Supreme Judicial Court of Massachusetts in a post-*Coolidge* decision, *Commonwealth v. Haefeli* (1972), 279 N.E.2d 915, 919, also upheld a warrantless search of an automobile on the probable cause to search theory and made the following comment on *Coolidge*:

"This result (invalid search because not coming within any of the exceptions to the warrant requirement) was reached in a lengthy opinion in which four Justices joined, and in a short concurring opinion by another Justice. Three of the other four Justices wrote opinions in part concurring and in part dissenting, and the fourth joined in one of those opinions. A large part of the principal opinion and of the dissenting opinions is devoted to a review of the earlier cases, especially the *Carroll* and *Chambers* cases, and in expressing divergent views on what those cases decided.

A reading of all of the opinions written in the *Coolidge* case indicates that the Justices of the United States Supreme Court were in seemingly irreconcilable disarray as to what the law was or ought to be with reference to the warrantless search of an automobile."

For all the reasons we have discussed, we hold that there was no error in denying Babic's motion to suppress as evidence the gun recovered from his automobile.

■■■ The third issue raised by defendant concerns the prosecutor's request during the State's case in chief and in the presence of the jury

before the defendant testified or indicated that he would in fact testify, that the complainant be allowed to remain in the courtroom during the testimony of the defendant. The request was appropriate but the manner of its making was clearly improper as it should have been made outside the presence of the jury. Under the circumstances of this case, however, it was not so prejudicial to defendant as to constitute reversible error. It was responsive to defense counsel's motion for exclusion of witnesses, no objection was made in the trial court, the defendant did testify in this trial and had testified in an earlier trial which terminated in a hung jury. It is not the policy of our courts to reverse a judgment of conviction merely because error was committed unless it appears that real justice has been denied or that the finding of guilty may have resulted from such error. *People v. Morehead* (1970), 45 Ill.2d 326, 332, 259 N.E.2d 8.

Judgment affirmed.

SEIDENFELD, P. J., and T. MORAN, J., concur.