2020 IL App (1st) 190568-U

No. 1-19-0568

Order filed October 13, 2020.

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 13112 |
| | ) | |
| RAYMOND MOORE, | ) | The Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LAVIN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Defendant's conviction and nine-year sentence for armed habitual criminal are affirmed over his contention that the State failed to prove his guilt beyond a reasonable doubt and that his sentence is excessive.

¶ 2   Following a bench trial, defendant Raymond Moore was found guilty of armed habitual criminal (AHC), unlawful use or possession of a weapon by a felon (UUWF), and aggravated unlawful use of a weapon (AUUW). The trial court merged the counts into a single count of AHC (720 ILCS 5/24-1.7(a) (West 2016)) and sentenced defendant to nine years' imprisonment.

Defendant appeals, arguing that the evidence was insufficient to support his guilt beyond a reasonable doubt and that his sentence is excessive. We affirm.

¶ 3    Defendant was charged by indictment with one count of AHC, four counts of UUWF, and six counts of AUUW.

¶ 4    At trial, Officer Juan Puente testified that, around 11 p.m. on August 11, 2016, he was on patrol in a marked vehicle with Officers Maseth and Mellett.[1] Near the 3700 block of West Madison Avenue, in Chicago, the officers stopped a Cadillac because it lacked visible license plates. Puente approached the rear passenger side window and observed three occupants. Puente also saw smoke that smelled like burnt cannabis coming from the vehicle, and what he believed to be cannabis on the lap of the rear passenger, later identified as Tyrone Lumpkin. Puente identified defendant in court as the front passenger. Puente also saw cannabis sprinkled on defendant's pants. The officers detained all three occupants and searched the vehicle for cannabis.

¶ 5    When Puente opened the front passenger's side door, he "immediately observed a magazine for a pistol" on the floorboard under defendant's seat. Puente notified the other officers and Maseth recovered the firearm, a "Ruger .380 with an extended magazine" and an attached laser. The weapon was loaded, including a round in the chamber and nine in the magazine. Puente saw about two inches of the approximately seven-inch magazine extending from underneath the seat.

¶ 6    On cross-examination, Puente could not recall whether the vehicle had two doors or four doors, or whether the front seats were bench seats or bucket seats or had a center console between them. Puente could not recall whether the space underneath the front seat, where the weapon was

---

[1]Officers Maseth's and Mellett's full names are not in the report of proceedings.

found, extended to the rear seat. Puente never saw defendant holding the firearm or reaching down and placing it on the floor, and was unaware whether he owned the vehicle.

¶ 7 Officer Manjarrez[2] testified that he was at the police station when Puente, Maseth, and Mellett arrived with defendant in custody. Manjarrez read defendant his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Defendant indicated to Manjarrez that he understood his rights and agreed to waive them. Manjarrez asked defendant if defendant knew who owned the firearm, and defendant responded, "[I]t's mine. I'll take my weight." Manjarrez asked defendant about the rounds loaded in the firearm, and defendant responded that the firearm "came like that when he purchased it." Defendant further explained to Manjarrez that he bought the firearm "off of Chicago for $1500."

¶ 8 On cross-examination, Manjarrez stated that, before he interviewed defendant, the other officers told Manjarrez that they had recovered a weapon under the front passenger seat, where defendant had been sitting. Defendant did not sign a written *Miranda* waiver, but waived each of his rights individually as Manjarrez recited them. Defendant's answers to Manjarrez's questions were noted in the arrest report, which another officer generated.

¶ 9 Manjarrez neither recorded his interview with defendant nor wrote down defendant's statements. Manjarrez could not recall how long the interview lasted, speaking with defendant about anything other than the firearm and its rounds, or speaking with Lumpkin or the driver.

¶ 10 The State published certified copies of defendant's prior felony convictions for robbery and manufacture or delivery of a controlled substance.

_____

[2]Officer Manjarrez's full name is not in the report of proceedings.

¶ 11    Defendant entered a stipulation that, if called, a fingerprint examiner would testify he examined the firearm, magazine, and ammunition, and found one latent print that "was not suitable for identification."

¶ 12    Defendant testified and acknowledged the two prior convictions. He stated that when the officers stopped the vehicle, he was in the front passenger seat, with Lumpkin sitting behind him. Defendant did not know the driver's name. All three occupants were handcuffed and put in the backseat of a police vehicle, and eventually taken to the police station.

¶ 13    Defendant denied that Manjarrez interviewed him. Instead, defendant spoke to a different officer, who informed defendant that he had found a firearm under the passenger seat and that somebody had to "take the weight for it." Defendant could not identify that officer but described him as Hispanic and in his mid-30's. Defendant had not known that the firearm was in the vehicle, and told the officer that the firearm was not his. Defendant did not recall any other conversation between him and any police officer about the firearm. Defendant denied telling Manjarrez that he would "take the weight" for the firearm or that he purchased it for $1500.

¶ 14    On cross-examination, defendant explained that he went to school with Lumpkin, and saw Lumpkin in the vehicle at a gas station while waiting for a bus. Defendant offered Lumpkin $5 for a ride home. Defendant did not know the driver. Lumpkin smoked marijuana during the ride, but defendant did not because he was on parole.

¶ 15    After argument, the trial court noted that it was required to make a credibility determination between the officers and defendant. The court determined that it was implausible that the officers conspired to frame defendant for possessing the firearm as opposed to Lumpkin or the driver. The court stated that it did not find defendant's testimony credible, and instead found that the officers

discovered the firearm under defendant's seat and that defendant accepted responsibility for the firearm; in particular, the court noted the way defendant offered Manjarrez details of the firearm's purchase. Accordingly, the trial court found defendant guilty of all counts, and merged them into the count for AHC.

¶ 16     Defendant filed a motion for a new trial, arguing in relevant part that the State did not prove beyond a reasonable doubt that he possessed the firearm. The court denied defendant's motion, and the case proceeded to sentencing.

¶ 17     The presentence investigation report (PSI) reflected that defendant was 24 years old on the date of the offense and graduated from high school. From 2015 until his incarceration, he worked as a waiter, dishwasher, and cook at a restaurant. Defendant's mother was murdered when he was four years old. Thereafter, defendant lived with his father, stepmother, and grandmother. Defendant denied experiencing abuse or neglect, and had a good relationship with his family. Defendant never married, but had a six-year-old son with whom he had regular contact and a good relationship.

¶ 18     Defendant reported that he smoked marijuana once per week between the ages of 16 and 19, and once per day from the age of 19 until an arrest in 2014, when he stopped. The PSI noted defendant's involvement with the Vice Lords street gang, although defendant denied gang affiliation. In addition to the felonies introduced at trial, defendant had convictions for contact with a street gang while on parole (2016), disorderly conduct (2014), gambling, for which he failed to appear (2012), two counts of soliciting unlawful business (2012), criminal trespass to state land (2012), and theft of services (2009).

¶ 19     At the sentencing hearing, the State noted in aggravation defendant's felony convictions for manufacture or delivery of a controlled substance in 2014, for which he received 5 years' imprisonment and boot camp, and robbery in 2012, for which he received 24 months' probation that was terminated unsatisfactorily. The State also noted defendant's multiple misdemeanor convictions and failure to appear.

¶ 20     In mitigation, defense counsel highlighted that defendant had spent his time incarcerated earning certificates for courses in mindfulness, bible study, and "Transform Your Thinking." In allocution, defendant stated that he wished to spend time with his son and dying grandfather, and that he wanted to "try my best to do better and be a better man" and "better person to my family."

¶ 21     The court noted that defendant had a "serious criminal history; albeit, nobody got hurt." The court stated that it found defendant's certificates "mitigating" and recognized that he was "trying very hard to make the best of a very difficult circumstance in more than one way." The court then sentenced defendant to nine years' imprisonment, explaining that it had planned to sentence him more harshly but did not in light of the mitigating evidence.[3] Defendant's motion to reconsider the sentence was denied.

¶ 22     Defendant appeals, first arguing that the State failed to prove his guilt of AHC beyond a reasonable doubt because Manjarrez's testimony was incredible and uncorroborated, and without defendant's statement, the State did not show that he knew the firearm was under his seat.

¶ 23     When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the

_____

[3]The court also sentenced defendant to a concurrent term of seven years' imprisonment for manufacture or delivery of a controlled substance in an unrelated case.

essential elements of the crime beyond a reasonable doubt. *People v. Jackson*, 2020 IL 124112, ¶ 64. It is the province of the trier of fact to resolve conflicts in the testimony, and we will not substitute our judgment for that of the trier of fact when considering the weight of the evidence or the credibility of the witnesses. *Id.* Accordingly, we will only overturn a conviction if "the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *Id.*

¶ 24    "A person commits the offense of being an armed habitual criminal if he \*\*\* possesses \*\*\* any firearm after having been convicted" of certain offenses two or more times. 720 ILCS 5/24-1.7(a) (West 2016). Because defendant does not dispute that he has two qualifying prior offenses, the issue before us is whether the State proved beyond a reasonable doubt that defendant possessed the firearm.

¶ 25    "Possession may be actual or constructive." *People v. Balark*, 2019 IL App (1st) 171626, ¶ 94 (citing *People v. Givens*, 237 Ill. 2d 311, 335 (2010)). A defendant has constructive possession of contraband when he has knowledge of the contraband's presence and control over the area where the contraband is found. *People v. Hunter*, 2013 IL 114100, ¶ 19. Control is shown by evidence that a defendant had the intent and capability to maintain control and dominion over the weapon, and can be inferred from the defendant's control over the area where the weapon was found. *People v. Jackson*, 2019 IL App (1st) 161745, ¶ 27. "Knowledge may be inferred from surrounding circumstances, such as the defendant's actions, declarations, or other conduct, which indicate that the defendant knew the contraband existed in the place where it was found." *Id.*

¶ 26    At trial, Puente testified that officers curbed a vehicle and found defendant in the front passenger seat, Lumpkin in the rear seat behind defendant, and a driver. Puente saw about two inches of the firearm's approximately seven-inch magazine extending from underneath

defendant's seat when he opened the vehicle's door. Officers recovered the weapon, a loaded .380-caliber Ruger with an extended magazine and attached laser. After Manjarrez read defendant the *Miranda* rights at the police station, defendant told Manjarrez that the firearm was his and that he would take responsibility for it. Defendant detailed the firearm's purchase, explaining that the firearm was already loaded when he bought it for $1500 "off of Chicago."

¶ 27    Viewed in the light most favorable to the State, the evidence adduced at trial supports the inference that defendant constructively possessed the firearm. The weapon was located under defendant's seat, giving him immediate access to it and control over the area where it was found. See *People v. Ingram*, 389 Ill. App. 3d 897, 900 (2009) (control over firearm in vehicle established when firearm was in location defendant could "easily" reach). Even if Lumpkin, in the rear passenger seat, also had access to the firearm, that would not preclude a finding that defendant controlled the firearm. See *People v. Tates*, 2016 IL App (1st) 140619, ¶ 25 (control can include joint possession, when two or more people both have immediate and exclusive control or intention and power to exercise control). While the presence of a weapon in a vehicle occupied by a defendant may not, without more, be enough to prove that the defendant knew the firearm was in the vehicle (*People v. Bailey*, 333 Ill. App. 3d 888, 891-92 (2002)), knowledge of the firearm may be inferred from circumstantial evidence, such as conduct or statements by the defendant indicating that he knew the contraband existed where it was found (*Jackson*, 2019 IL App (1st) 161745, ¶ 27). Here, in addition to the discovery of a firearm under defendant's seat, defendant gave a statement to Manjarrez establishing his knowledge of the weapon and acknowledging ownership.

¶ 28    Defendant argues that Manjarrez testified falsely about a "constructed confession" to secure defendant's conviction despite a dearth of other evidence. However, so long as the testimony is positive and credible, the testimony of a single witness is sufficient to sustain a conviction, and we will not reverse defendant's conviction simply because he claims that Manjarrez's testimony was incredible. *People v. Gray*, 2017 IL 120958, ¶ 36 (citing *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009)). As the trial court noted, it was required to make a credibility determination between the conflicting testimony of Manjarrez and defendant. The trial court adjudged Manjarrez's testimony credible and defendant's testimony incredible. We cannot disturb that conclusion on appeal. See *People v. Barboza-Zaragoza*, 2020 IL App (1st) 180084, ¶ 34 ("it is for the trial judge *** to determine the credibility of witnesses" (internal quotation marks omitted)); see also *Siguenza-Brito*, 235 Ill. 2d at 229 (trier of fact " 'entitled to disbelieve defendant's explanation of the incriminating circumstances in which he was found especially in view of testimony that defendant had told different story at the time of his arrest' " (quoting *People v. Morehead*, 45 Ill. 2d 326, 330 (1970)); *People v. Hunley*, 313 Ill. App. 3d 16, 22 (2000) (noting it was factfinder's duty to weigh defendant's testimony against officers' and decide whether defendant committed offense or was "frame[d]" by police).

¶ 29    In support of his argument that Manjarrez's testimony was unworthy of belief, defendant cites a number of articles and studies examining the reliability of police testimony. However, because none of these materials were presented to the trial court, we decline to consider them on appeal. See *People v. Mehlberg*, 249 Ill. App. 3d 499, 531-32 (1993) (not considering studies cited for first time on appeal because they were "an attempt to interject expert-opinion evidence into the record" that was not subject to cross-examination or considered by trial court).

¶ 30    Coupling defendant's statement to Manjarrez that the firearm was his with the testimony that officers found the firearm under defendant's seat, we conclude that the State proved beyond a reasonable doubt that defendant possessed the firearm, and therefore committed the offense of AHC.

¶ 31    Next, defendant argues that his nine-year sentence is excessive compared to the seriousness of his offense, does not reflect his rehabilitative potential, and is contrary to the public good.

¶ 32    When imposing a sentence, the sentencing court must balance both the seriousness of the defendant's offense and the objective of restoring the defendant to useful citizenship. Ill. Const. 1970, art. I, § 11; *People v. Wilson*, 2012 IL App (1st) 101038, ¶ 61. However, because sentencing courts are in a better position to observe the defendant and weigh factors such as the defendant's credibility, demeanor, and moral character, their decisions are given substantial deference. *People v. Snyder*, 2011 IL 111382, ¶ 36. A reviewing court will therefore not substitute its judgment for the sentencing court's merely because it would have weighed such factors differently. *People v. Alexander*, 239 Ill. 2d 205, 213 (2010).

¶ 33    Accordingly, reviewing courts will only modify a sentence if the sentencing court abused its discretion. *Id.* at 212; see also *People v. Williams*, 2017 IL App (1st) 150795, ¶ 43 (" ' A sentence within statutory limits will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. ' " (quoting *People v. Fern*, 189 Ill. 2d 48, 54 (1999)).

¶ 34    Sentencing courts are presumed to have considered the relevant mitigating factors presented, a presumption that "cannot be overcome without affirmative evidence of *** failure to do so." *Id.* ¶ 44; see also *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 19 (reviewing court

presumes trial court considered relevant mitigating factors absent contrary indication, besides sentence itself). "The seriousness of the crime is the most important factor in determining an appropriate sentence" (*People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002)), and the sentencing court is therefore not required to give it less weight than the defendant's rehabilitative potential (*Alexander*, 239 Ill. 2d at 214).

¶ 35    We conclude that the trial court did not abuse its discretion. AHC carries a mandatory Class X sentence of between 6 and 30 years' imprisonment. 720 ILCS 5/24-1.7(b) (West 2016); 730 ILCS 5/5-4.5-25(a) (West 2016). Because defendant's nine-year sentence falls within that range, it is presumed to be proper. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 47.

¶ 36    As the trial court noted, defendant has a serious criminal history and a pattern of recidivism, including two prior felonies, multiple misdemeanor convictions, and an unrelated felony for which he was sentenced to seven years' imprisonment concurrent with his sentence in this case. The trial court was free to consider that evidence in aggravation. See *People v. Wilson*, 2016 IL App (1st) 141063, ¶ 13 (noting that " 'criminal history alone' may 'warrant sentences substantially above the minimum' ") (quoting *People v. Evangelista*, 393 Ill. App. 3d 395, 399 (2009)). Further, we cannot say that defendant's nine-year sentence—which is at the lower end of the mandatory Class X range—is manifestly disproportionate to the seriousness of defendant's offense when he was found guilty of possessing a loaded firearm, modified with an extended magazine and an attached laser, in a vehicle on a public street while on parole or mandatory supervised release.

¶ 37    Nor do the mitigating factors that defendant presented necessitate a finding that his sentence is excessive. The seriousness of defendant's crime is a more important factor than the evidence defendant put forth in mitigation, such as the certificates he earned or his family support,

employment history, and education. *Alexander*, 239 Ill. 2d at 214; *Quintana*, 332 Ill. App. 3d at 109. Moreover, we cannot conclude that the trial court did not give defendant's mitigating evidence its due weight when the trial court explicitly noted that it found the evidence mitigating and explained that it was imposing a lighter sentence than it would have absent defendant's showings. See *Sauseda*, 2016 IL App (1st) 140134, ¶ 19 (reviewing court presumes trial court considered relevant mitigating factors absent contrary indication, besides sentence itself). Defendant cites studies about the ineffectiveness of long sentences for possessory gun offenses in curbing gun violence and the community harm caused by mass incarceration of African-American men in support of his arguments that his sentence is excessive and contrary to the public good, but we again decline to consider such studies for the first time on appeal. *Mehlberg*, 249 Ill. App. 3d at 531-32.

¶ 38   In all, we conclude that the trial court did not abuse its discretion by imposing a disproportionate sentence or failing to consider defendant's rehabilitative potential or the public good. The trial court was entitled to weigh all of the factors in aggravation and mitigation, and selected a sentence on the low end of defendant's mandatory range after noting that it found defendant's showings in mitigation persuasive. Defendant's arguments on appeal amount to a request that we reweigh those factors, but we will not substitute our judgment for the trial court's simply because we may have weighed them differently. *Alexander*, 239 Ill. 2d at 213.

¶ 39   Accordingly, for the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 40   Affirmed.